UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DAVID P. DEMAREST, an individual,  )
PLAINTIFF  )
  )
       v.  )    CASE NO. 2:21-cv-00167-wks
  )
TOWN OF UNDERHILL, a municipality  )
and charter town, SELECTBOARD CHAIR )
DANIEL STEINABAUER, as an  )
individual and in official capacity,  et al.  )

**MOTION TO DISMISS AMENDED COMPLAINT**

The Defendants, Town of Underhill (the "Town"), Daniel Steinbauer, Bob Stone, Peter

Duval, Dick Albertini, Judy Bond, Peter Brooks, Seth Friedman, Marcy Gibson, Barbara Greene,

Carolyn Gregson, Stan Hamlet, Rick Heh, Brad Holden, Faith Ingulsrud, Kurt Johnson, Anton

Kelsey, Karen McKnight, Nancy McRae, Michael Oman, Steve Owens, Mary Pacifici, Clifford

Peterson, Patricia Sabalis, Cynthia Seybolt, Trevor Squirrell, Rita St. Germain, Daphne Tanis,

Walter "Ted" Tedford, Steve Walkerman, Mike Weisel, and Barbara Yerrick (the "Town" and

the "31 named individuals", collectively, the "Municipal Defendants"), by and through their

attorneys, Carroll, Boe, Pell & Kite, P.C., respectfully submit this Motion to Dismiss Amended

Complaint under F.R.C.P. 12(b)(6), asking that the Court dismiss the Amended Complaint on the

grounds of (1) statute of limitations; (2) *res judicata*; and (3) failure to state a claim upon which

relief may be granted. In further support of this Motion, the Municipal Defendants provide the

following:[1]

---

[1] In joining this motion, Defendants who have not yet been served do not intend to waive any objection to sufficiency of Service. *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (1972) ("A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer.").

## MEMORANDUM OF LAW

### I.   STANDARD OF REVIEW FOR 12(b)(6) MOTION

The factual background of this case is summarized in the next section. However, because a full overview of the case's context requires judicial notice of public documents associated with the "12 years of Vermont state court litigation," Doc. 46 at ¶ 3, referenced throughout the First Amended Complaint, this Motion first discusses the standards related to a motion to dismiss under F.R.C.P. 12(b)(6) and the information this Court may consider in reviewing such a motion.

The standard of review on a motion to dismiss self-filed by a *pro se* plaintiff is well-established and may be summarized as follows:

> The court is required to read a self-represented plaintiff's complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citation omitted); *see also Harris v. Miller*, 818 F.3d 49, 56-57 (2d Cir. 2016) (per curiam) (noting district courts must afford "special solicitude" to a self-represented litigant including reading the complaint liberally and construing it to raise the strongest arguments it suggests).
>
> All complaints, however, must contain "sufficient factual matter[] . . . to state a claim" for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a) (listing required contents of a pleading that states a claim for relief). In determining whether a complaint states a claim, the court must "accept as true all of the allegations contained in a complaint" and decide whether the complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* While "special solicitude" is required, self-represented litigants nevertheless must satisfy the plausibility standard set forth in *Iqbal*. *See Harris*, 818 F.3d at 56; *Harris v. Mills*, 572 F.3d 66, 68, 72 (2d Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

*Gadreault v. Bent*, 2021 U.S. Dist. LEXIS 28443, *3-4, 2021 WL 579801 (D. Vt. 2021).

Under F.R.C.P. 12(d), a court may convert a motion to dismiss to a summary judgment motion under F.R.C.P. 56 if the court considers "matters outside the pleadings." However, a

district court *may* consider state court complaints and decisions while reviewing a motion to dismiss, without converting the motion into a summary judgment motion, because such documents are public records and appropriate for judicial notice. *Williams v. N.Y. City Hous. Auth.*, 816 Fed. Appx. 532, 534, 2020 U.S. App. LEXIS 17454, *3 (2d Cir. 2020); *Heathcote Assocs. v. Chittenden Trust Co.*, 958 F. Supp. 182, 185 (D. Vt. 2020). When a district court considers such materials, it may not rely on the state court documents for the truth of the *factual* matters asserted therein; rather, it may take notice of such documents to "establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). Such consideration may extend to taking notice of the specific claims considered and the specific grounds upon which those issues were resolved. *Dixon v. Blanckensee*, 994 F.3d 95, 103 (2d Cir. 2021).

In addition to such public records, a district court may also consider documents of which a plaintiff had notice, to which a plaintiff refers, and on which a plaintiff relies in his or her complaint.

> When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217, (2d Cir. 2004). Court consideration and review of such documents does *not* convert a motion to dismiss into a motion for summary judgment under F.R.C.P. 12(d). *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the

complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

In reliance on these principles, the Municipal Defendants ask this Court to consider four decisions in four separate state court matters referenced in Plaintiff's Complaint, but only for the purposes of (1) establishing that the four matters were litigated, (2) identifying the issues that were considered in each matter, (3) clarifying the manner in which the issues in each matter were resolved, and (4) resolving the Municipal Defendants' res judicata defenses (discussed infra). Such use of these state court decisions is appropriate on this motion to dismiss because Plaintiff repeatedly alleges misuse of state court litigation in his Complaint, quotes one of these state court decisions extensively to establish the accrual date of his claims and had full notice of these decisions prior to filing his Complaint. Accordingly, the Plaintiff has himself invited use of these decisions in the context of this motion to dismiss.

## II.   THE FACTUAL BACKGROUND FOR PLAINTIFF'S CLAIMS

A brief overview of major events in Plaintiff's Amended Complaint will facilitate understanding of the First Amended Complaint and this Motion to Dismiss.[2] Plaintiff's claims relate to three broad categories of events: (1) claims related to access and maintenance of Town Highway 26 ("TH 26") (which abuts Plaintiff's property in Underhill, Vermont) from the period 2001 through 2012; (2) claims related to the Vermont Supreme Court's interpretation of Vermont highway law in *Ketchum* and the Municipal Defendants' reliance on *Ketchum* in state court actions; (3) First Amendment claims alleging the defendants refused to abide by the

---

[2] This version of events is drawn primarily from Plaintiff's Amended Complaint, Doc. 46, and assumes all well-plead factual allegations in the Complaint to be true. The Town reserves the right to dispute any of these alleged facts in the future. However, because the Amended Complaint does not clearly describe the state litigation that forms a central foundation of Plaintiff's allegations, this overview also relies on reported opinions in the relevant state court actions to explain the fact that litigation occurred, the issues the state courts considered, and the manner in which those issues were resolved.

demands of lawfully submitted petitions and censored Plaintiff by illegally shaping the public

record. This section provides necessary background on each category of claim and describes

those claims in broad strokes. Some details of the claims are discussed more fully in the

Argument that follows.

### A. Plaintiff's Access and Maintenance Claims: 2001-2010.

In 2002, Plaintiff purchased property in the

Town of Underhill located on TH 26. Doc. 46 at

¶ 136. The Figure to the right (copied from ¶ 48 of

the Amended Complaint) depicts the disputed

portion of TH 26. The road depicted on the left side

of the Figure represents TH 26 and the Figure

includes handwritten notes describing features

located along the road, including (moving from

south to north) the location of the "Town Garage,"

"Sheera's Property," and the "Demarest Property."

To the south, at the bottom of the figure, TH 26 is

shown intersecting with another road, which is

Pleasant Valley Road. Doc. 46 at ¶ 168. Although

not pictured in the schematic, TH 26 intersects with

Irish Settlement Road to the north. Doc. 46 at ¶ 58.



The core contention of the Amended

Complaint is that the defendants violated Plaintiff's

constitutional rights by improperly removing

vehicular access to his property along the portion of TH 26 lying between the two hand-drawn lines in Figure 1, from the Town Garage in the south to Plaintiff's driveway to the north. This disputed portion of TH 26 is now known as Crane Brook Trail. Plaintiff seeks vehicular access running from his driveway, along Crane Brook Trail to the South, past the Town Garage, and then on to Pleasant Valley Road (the "Southern Access Route").[3] *See* Doc. 46 at ¶ 168 (describing northern and Southern Access) and ¶ 48 (providing depiction of subject routes).

The Amended Complaint does *not* allege that Plaintiff has been deprived of *all* vehicular access to his property; rather, Plaintiff alleges that he retains vehicular access to his property from the north, along the northern segment of TH 26 and then onto Irish Settlement Road. *Id.* at ¶ 168. However, Plaintiff prefers the southern access because he considers the northern access inconvenient and unreasonable. *See id.* at ¶ 168. Accordingly, the Amended Complaint repeatedly asserts that Plaintiff is seeking "reasonable" access to his property or compensation for its loss. *E.g.*, *id.* at ¶ 1, ¶ 56 n.1, ¶ 70 and ¶ J. Although many other claims attend this core allegation or flow naturally from it, the practical, physical and legal loss of the Southern Access Route and the resulting litigation over that loss form the central through-line of the Amended Complaint.

In 2001, prior to Plaintiff's purchase, TH 26 was classified under Vermont law as a "Class 3" road in some locations and a "Class 4" road in others. *Id.* at ¶ 59 and ¶ 48. This fact is significant to Plaintiff's claims because towns have a statutory obligation to maintain Class 3 and

---

[3] Over the last 21 years, TH 26 has been known by many names and designations, including ""TH26" / "New Road" / "Fuller Road" / "Crane Brook Trail" / "Old Dump Road."" Doc. 46 at ¶ 59. For the sake of simplicity, this Motion will refer to the disputed portion of TH 26 as Crane Brook Trail and the route from Plaintiff's property to Pleasant Valley Road via Crane Brook Trail as the "Southern Access Route," which both specifies the location of the disputed portion of TH 26 relative to Plaintiff's property (i.e., to the south) and the purpose—access—to which Plaintiff wishes to put it. The phrase is admittedly imprecise, but it is sufficient for purpose of this Motion, given the Complaint does not seek clarification of the exact location of the access route, but rather seeks confirmation that Plaintiff is entitled to use a vehicle to pass over the route and/or to be compensated for the loss of that access. Doc. 46 at ¶ 201.

Class 4 roads in accordance with the standards imposed by 19 V.S.A. § 310(a) (Class 3) and 19 V.S.A. § 310(b) (Class 4), meaning the Town would have a statutory obligation to maintain the entirety of TH 26, from Irish Settlement Road to the north to Pleasant Valley Road to the south.

In 2001, however, the Town of Underhill conducted proceedings in an effort to reclassify the middle portion of TH 26—the portion now known as Crane Brook Trail—as a "trail." *Id.* at ¶ 4. The Town's 2001 reclassification effort was significant because, under Vermont law, although a town *is* subject to maintenance requirements for Class 3 and Class 4 roads, a town is "not liable for construction, maintenance, repair, or safety of trails." 19 V.S.A. § 310(c). However, a "trail" is still a public "right of way."[4] 19 V.S.A. § 301(8). The middle portion of TH 26 would only cease to be a public right of way if the Selectboard had discontinued the segment entirely. 19 V.S.A. § 771 *et seq.*

Plaintiff alleges this 2001 reclassification effort was subsequently held invalid in 2011 by a Vermont trial court and maintains that the Town had a continuing obligation from 2001 to 2010 to maintain TH 26 in accordance with the highway's classifications in existence prior to the 2001 reclassification effort. Under this view, between 2001 and 2010, the southern portion of TH 26 (from Pleasant Valley Road to "Sheera's Property") should have been maintained as a Class 3 highway and the northern portion of TH 26 (from "Sheera's Property" to Irish Settlement Road) should have been maintained as a Class 4 highway. Doc. 46 at ¶¶ 4, 48 and 50A. However, after the 2001 reclassification attempt, the Town of Underhill ceased maintenance of Crane Brook Trail and conditions along the segment deteriorated over the next nine years. *Id.* at ¶ 47.

---

[4] The full definition of "trail" reads: "'Trail' means a public right-of-way which is not a highway and which: (A) previously was a designated town highway having the same width as the designated town highway, or a lesser width if so designated; or (B) a new public right-of-way laid out as a trail by the selectmen for the purpose of providing access to abutting properties or for recreational use. Nothing in this section shall be deemed to independently authorize the condemnation of land for recreational purposes or to affect the authority of selectmen to reasonably regulate the uses of recreational trails." 19 V.S.A. § 301(8).

Plaintiff also alleges that Town officials promised him prior to his 2002 purchase that the Town would preserve vehicular access along the Southern Access and that this promise was subsequently broken. *Id.* at ¶ 130 and 168.

**B.  Plaintiff's Access and Maintenance Claims: 2010-2016.**

The Town's treatment of Crane Brook Trail as a trail during 2001 through 2010 yielded three separate state court actions. In 2010, Plaintiff and others filed suit, seeking an order directing the Town to maintain Crane Brook Trail in accordance with the Class 3/Class 4 maintenance standards that were in place for the segment prior to the Town's 2001 effort to reclassify the segment as a trail (the "2010 Trail Maintenance Case").

In response to this suit, the Town held new municipal proceedings in 2010 to reclassify the middle portion of TH 26 as a trail. Am. Compl. at ¶ 59. The Selectboard issued a 2010 order stating:

> TH 26 should now consist of three separate segments: The first segment shall extend, as before, from Pleasant Valley Road north to the Town Garage and shall be maintained as a Class 3 highway; the second shall be a legal trail extending from the Town Garage north to a point just south of the current driveway access to TH 26 from the property now owned by David Demarest, and; the third remaining segment shall extend from the northern end of the legal trail north to Irish Settlement Road, shall be known as Fuller Road, and shall be maintained as a Class 4 highway.

*Demarest v. Town of Underhill*, 2013 VT 72, ¶5, 195 Vt. 204, 207. Plaintiff and others then appealed this 2010 reclassification decision (the "2010 Reclassification Appeal") via Vermont Rule of Civil Procedure (V.R.C.P.) 75. (The significance of this procedural fact will become apparent below.)

On February 28, 2012, while the 2010 Maintenance Case and the 2010 Reclassification Appeal were ongoing, Plaintiff and others filed a "Notice of Insufficiency" pursuant to 19 V.S.A. § 971, alleging that the Town had failed to maintain the northern, Class 4, segment of TH 26 in

accordance with 19 V.S.A. § 310(b) (the "2012 Class 4 Maintenance Case"). *Demarest v. Town of Underhill*, 2016 VT 10, ¶5, 201 Vt. 185, 187.

At first, the 2010 Trail Maintenance Case and the 2010 Reclassification Appeal proceeded simultaneously. However, the trial court in the 2010 Trail Maintenance Case stayed that action while the 2010 Reclassification Appeal was underway because the trial court recognized that the decision in the reclassification case might render the 2010 Trail Maintenance Case moot. *Demarest v. Town of Underhill*, 2013 VT 72, ¶19, 195 Vt. 204, 213.

In a 2013 decision, the Vermont Supreme Court affirmed the 2010 reclassification, concluding "there is competent evidence to support the Town's decision to reclassify the road." *Demarest v. Town of Underhill*, 2013 VT 72, ¶28, 195 Vt. 204, 216. The Vermont Supreme Court confirmed that the Town's 2010 reclassification effort had succeeded and that the disputed portion of TH 26 was a legal trail (now named Crane Brook Trail). This decision severed vehicular access along Plaintiff's Southern Access Route because the Town of Underhill's 2002 Trail Ordinance prohibited vehicular access over the trail. *Demarest v. Town of Underhill*, 2013 VT 72, ¶30, 195 Vt. 204.

Following the 2013 reclassification decision, the trial court in the 2010 Trail Maintenance Case dismissed the action on the ground that it was now moot, because the disputed portion had been successfully reclassified as a trail. Plaintiff appealed and, in 2015, a three-Justice panel of the Vermont Supreme Court held that, given the Court's 2013 decision in the 2010 Reclassification Appeal, the 2010 Trail Maintenance Case was "moot" because the case no longer presented

> an actual live, controversy. The ultimate fact remains, as explained by the trial court, that the disputed segment of TH 26 is a trail, and the town has no legal obligation to maintain a trail.

*In re Town Highway 26*, 2015 Vt. Unpub. LEXIS 87, *9, 199 Vt. 648, 114 A.3d 505. This resolved whether the Town was required to maintain Crane Brook Trail.

Meanwhile, the trial court in the 2012 Class 4 Maintenance Action received the recommendations of the County Road Commissioners and issued an order (based in part on those recommendations) directing the Town to maintain the northern Class 4 portion of TH 26 in a court-directed manner. The Town appealed this order to the Vermont Supreme Court.

In a January 1, 2016 decision, the Vermont Supreme Court held that "the trial court misconstrued and incorrectly applied the statutory provisions for the maintenance of Class 4 roads and erroneously established its own maintenance standard."[5] *Demarest v. Town of Underhill*, 2016 VT 10, ¶1, 201 Vt. 185, 186. The Court emphasized the wide discretion the Legislature had given towns in connection with maintenance of Class 4 highways:

> Although the Town's road policy establishes less town responsibility for Class 4 highway repair and maintenance than appellees desire, or even than the Commissioners recommend, it is fully consistent with the discretion accorded by § 310(b). Both appellees and the Commissioners are bound to respect the Town's discretion, and cannot "trump the selectboard's decision through their own view of what the public good requires." *Id.* at 622, 795 A.2d at 1269. If appellees do not agree that the Town's decision satisfies the necessity of the town, the public good, or the convenience of the inhabitants of the Town, the "[c]onduct of elected officials, detrimental to the interests of the town but not amounting to arbitrary abuse of authority justifying the issuance of a writ, is subject to regulation at the polls." *Couture v. Selectmen of Berkshire*, 121 Vt. 359, 364, 159 A.2d 78, 81 (1960).

*Demarest v. Town of Underhill*, 2016 VT 10, ¶16, 201 Vt. 185, 192. This 2016 decision brought the two 2010 actions and the 2012 action to a close.

---

[5] It should be noted that the Town had already appealed the superior court's maintenance order when the Supreme Court decided the reclassification issue in 2013; the court noted the pending appeal in its opinion. *Demarest v. Town of Underhill*, 2013 VT 72, P8 n.2, 195 Vt. 204, 208 n.2, 87 A.3d 439, 442.

### C.  Plaintiff's Access and Maintenance Claims: 2016-2021.

In 2015, Plaintiff submitted a subdivision permit application to the Town, which included a new request for vehicular access over the Crane Brook Trail to allow Plaintiff to access some of the proposed subdivided parcels over the Southern Access Route. The Selectboard denied the application, refusing to exercise its discretion under the 2002 Trail Ordinance to grant Plaintiff vehicular access over Crane Brook Trail. Plaintiff filed suit in 2016 (the "2016 Subdivision Appeal") "seeking a declaration that he had a right of vehicle access over Crane Brook Trail and appealing the denial of the permit." *Demarest v. Town of Underhill*, 2021 VT 14, ¶6.

The 2016 Subdivision Appeal reached its final resolution on February 26, 2021, when four of the five Vermont Supreme Court Justices held that Plaintiff's claims were barred on *res judicata* grounds because Plaintiff had already litigated the issue of vehicular access over Crane Brook Trail in the 2010 Reclassification Appeal:

> Plaintiff also argues that claim preclusion does not apply given the nature of the prior action. The Rule 75 appeal [the 2010 Reclassification Appeal] challenged the Town's roadway reclassification, which was an action affecting all residents of the Town, and therefore plaintiff asserts that it would not have been an appropriate forum to raise his individual claim regarding his right of access. There may be cases where an individual claim is not barred by *res judicata* based on the individual's participation in a prior group or class action. *See, e.g., Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1266, 1268-70 (D. Kan. 2012) (holding that employee's action for retaliatory discharge was not barred by claim preclusion based on his participation as class member in Fair Labor Standards Act action because combining actions would not have conformed to parties' expectations and would have presented serious disadvantages). We need not decide the circumstances or scope of such a rule, however, because this situation did not involve a prior class or group action. Here, the Rule 75 case was not litigated on behalf of a group or class; rather, plaintiff litigated that action as an individual. As explained in detail above, plaintiff could have sought declaratory relief in that case, and having failed to do so, is barred from now relitigating the issue.

*Demarest v. Town of Underhill*, 2021 VT 14, ¶20. The Court also concluded "The Selectboard acted well within its discretion under the Town Ordinance in considering a variety of factors, including environmental concerns, and denying plaintiff's request to use the trail as a roadway."

11

*Demarest v. Town of Underhill*, 2021 VT 14, ¶30. The 2021 decision resolved the fourth and last

of Plaintiff's four state court actions related to TH 26. The Amended Complaint alleges no post-

2010 allegations regarding Crane Brook Trail. *But see* Doc. 46 at ¶ 171 (alleging Town has

refused to "provide any maintenance" of the Class 4 section of TH 26); *also id*. ¶ 168.

    **D.  Plaintiff's *Ketchum* Litigation Claims.**

    The second broad category of claims in the Amended Complaint center on the manner in

which the state court litigation described above was conducted, with particular focus on *Ketchum*

*v. Town of Dorset*, 2011 VT 49, ¶1, 190 Vt. 507, 507. The Amended Complaint alleges that the

Vermont Supreme Court's *Ketchum* decision has permitted the Town and its officials "to

willfully deceive the Vermont state courts by misrepresenting or censoring relevant facts" in the

2010 Maintenance Case, the 2010 Reclassification Appeal, and the 2016 Subdivision Case. Doc.

46 at ¶ 60. The Complaint contends that the Municipal Defendants  "willfully perpetuated"

"deceit, fraud, and obstruction" in the three litigations, which the Complaint describes as "a

Kafkaesque maze of non-chronological appellate-style reviews of Defendants Town of

Underhill's administrative decisions over the span of 12 years of Vermont state court litigation."

Doc. 46 at ¶ 3. The Complaint alleges further that Town officials "committed intrinsic and

extrinsic fraud in Vermont courts." *Id.* at ¶ 73; also *id.* at ¶¶ 50, 77, 248, 262, and C.

    *Ketchum* considered whether reclassification of an existing highway was subject to

review under Vermont Rule of Civil Procedure (V.R.C.P.) Rule 74—which allows *de novo*

review of selectboard action—or V.R.C.P. 75—which allows review of selectboard actions

based on review of the administrative record. Generally, V.R.C.P. 75 applies whenever the

Vermont statutes are silent on the form of review. *See* V.R.C.P. 75(a). Although review of the

administrative record is the usual path for a Rule 75 appeal, a reviewing court *does* have

discretion to "to engage in a de novo proceeding and take additional evidence. *See* V.R.C.P. 75(d) (allowing for trial by jury in some cases)." *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶9, 191 Vt. 76, 81. When a Rule 75 appeal is resolved by review of the administrative record, the reviewing court will affirm selectboard action "if there was adequate evidence to support the selectboard's decision, and the superior court correctly denied plaintiffs' request to supplement the record on appeal." *Ketchum v. Town of Dorset*, 2011 VT 49, ¶16, 190 Vt. 507, 511.

To determine whether a reclassification proceeding was subject to Rule 74 or Rule 75 review, the *Ketchum* Court examined 19 V.S.A. § 740.[6] The *Ketchum* Court concluded that "reclassification" of a highway did not come within the scope of § 740 based on a plain reading of the statute. *Ketchum v. Town of Dorset*, 2011 VT 49, ¶11, 190 Vt. 507, 510. The *Ketchum* Court expressly rejected the argument that the word "altering," used in the statute, should include reclassification of a highway:

> We cannot say that it is wholly irrational for the Legislature to choose to have a different standard of review for the selectboard's decision to reclassify a town highway than for the altering, laying out or resurveying of a highway. All of the latter decisions implicate a town's eminent domain power because they may require a taking of land abutting the town highway. In contrast, downgrading a road does not involve a taking. *See Whitcomb*, 123 Vt. at 399, 189 A.2d at 553 (explaining that reclassifying a road to a trail does not involve the condemnation of land). While there may be reasons to adopt a different procedure than the one set forth in the statute, "we must implement the Legislature's policy choice rather than the court's." *Town of Calais v. Cnty. Rd. Comm'rs*, 173 Vt. 620, 624, 795 A.2d 1267, 1271 (2002) (mem.). We will not second-guess the Legislature's unambiguous direction by inserting words into the statute.

*Ketchum v. Town of Dorset*, 2011 VT 49, ¶13, 190 Vt. 507, 510. Plaintiff quotes this holding, in part, in the Amended Complaint. Doc. 46 at ¶ 68.

---

[6] Under § 740, Rule 74 review is available "When a person owning or interested in lands through which a highway is laid out, altered, or resurveyed by selectboard members, objects to the necessity of taking the land, or is dissatisfied with the laying out, altering, or resurveying of the highway, or with the compensation for damages." 19 V.S.A. § 740.

The Complaint alleges, *inter alia*, (1) that *Ketchum* is "an unconstitutional judicial interpretation of Vermont law." Doc. 46 at ¶ 68; (2) that "due to *Ketchum*, interested persons in Vermont are now denied the procedural due process afforded a Rule 74 appeal," *id.* at ¶ 72; (3) that "Rule 75 appeals are so heavily deferential to municipal administrative decisions that, as a matter of law, a structural due process violation occurred," *id.* at ¶ 73; (4) that the *Ketchum* ruling allows the Town to "create its own legal record to undergo administrative review," *id.* at ¶ 75; and (5) that the *Ketchum* ruling has given town officials "a windfall level of unchecked governmental authority to use executive actions and concurrent willful extrinsic and intrinsic fraud to violate Plaintiff's procedural due process rights," *id*. at ¶ 105 and ¶ 116. The Amended Complaint seeks injunctive relief that would (1) find that *Ketchum* is an unconstitutional interpretation of Vermont law, (2) re-interpret Vermont law to require that road maintenance and classification appeals be appealable under Rule 74; and (3) require Vermont courts to hold a new appeal hearing of Plaintiff's maintenance and reclassification claims using the Rule 74 appeals process. Doc. 46 at ¶¶ A-C.

### E. Plaintiff's First Amendment Claims.

Plaintiff also alleges that town officials have violated his First Amendment rights in two distinct ways. First, Plaintiff alleges that the Municipal Defendants have censored Plaintiff by distorting the public record of his input to public proceedings and have retaliated against Plaintiff for his public speech. *See* Doc. 46 at Seventh and Eighth Causes of Action, ¶¶ 266-269. Second, Plaintiff alleges that the Municipal Defendants have violated his First Amendment right to petition by "refusing to abide by duly submitted petitions." *Id.* at Eleventh and Twelfth Causes of Action, ¶¶ 280-282. The specific allegations related to these claims are discussed infra.

### F.  The Current Procedural Posture.

Plaintiff filed the first Complaint in this action on June 21, 2021. On July 13, 2021, the Municipal Defendants filed a Motion to Dismiss seeking dismissal of the Complaint on the grounds, *inter alia*, that Plaintiff's allegations were prolix, vague, and unfocused and lacked specific allegations against the named defendants, referring instead to the "Defendants" collectively, a choice that made it difficult for the individual defendants to frame an adequate response. On August 2, 2021, Plaintiff filed an Amended Complaint.

This Motion to Dismiss is a response to the Amended Complaint. Because "Plaintiffs' filing of the First Amended Complaint mooted the motion to dismiss and the related briefing," *Given v. Rosette*, 2015 U.S. Dist. LEXIS 118689, *3, the Municipal Defendants will not provide any additional briefing related to the original Motion to Dismiss. However, the Municipal Defendants will "incorporate" some of the briefing into this Motion to Dismiss Amended Complaint. *Given v. Rosette*, 2015 U.S. Dist. LEXIS 118689, *4.

## III.   ARGUMENT

The following argument will show (1) that Plaintiff's Ketchum-based claims are barred by the *Rooker-Feldman* doctrine; (2) that the Amended Complaint fails to state a claim upon which relief may be granted as to the Municipal Defendants; (2) that the Plaintiff's claims are barred by the applicable statute of limitations; (3) that some of Plaintiff's claims are barred by *res judicata*; (4) that the Amended Complaint must be dismissed as to certain individual defendants because it makes no allegations against them; and (5) the infirmities of the Complaint described in the Municipal's Defendants' Motion to Dismiss persist in the Amended Complaint.

### A. Plaintiff's Ketchum claims should be dismissed based on the Rooker-Feldman doctrine.

As mentioned previously, Plaintiff asks this Court to reject the Vermont Supreme Court's interpretation of Vermont state law in *Ketchum* as unconstitutional and to reverse the Vermont Supreme Court's rulings in the cases in which Plaintiff was involved, giving Plaintiff a de novo hearing of his claims regarding Crane Brook Trail. Doc. 46 at ¶¶ A-C. Plaintiff's request to reject state law judgments and make him the victor as to Crane Brook Trail presents a textbook *Rooker-Feldman* scenario, and his *Ketchum* claims must be dismissed on that basis.

"[T]he *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The *Rooker-Feldman* doctrine bars a federal suit if the following factors are present:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock,* , 422 F.3d at 85 (internal emendations omitted). All of these elements are present here. Here, Plaintiff has lost, not once, but four times in four separate state court judgments, and he complains of injuries caused by those judgments. Plaintiff expressly invites the district court to review and reject those judgments, all of which were rendered before Plaintiff filed this action. Plaintiff's claims, to the extent they seek to overturn the Vermont State Court's rulings in the prior litigation are barred under the *Rooker-Feldman* doctrine and should be dismissed.

### B. The Amended Complaint fails to state a claim against upon which relief can be granted against the Municipal Defendants.

Plaintiff asserts five basic § 1983 claims against the Municipal Defendants: (1) a procedural due process claim based on alleged violations of the Fourteenth Amendment (First

and Second Causes of Action); (2) a substantive due process claim based on alleged violations of the Ninth and Fourteenth Amendment (Third and Fourth Causes of Action); (3) a takings claim based on alleged violation of the Fifth Amendment (Fifth and Sixth Causes of Action); (4) a "censorship and manipulation of public records" claim based on alleged violation of the First Amendment (Seventh and Eighth Causes of Action); and (5) a "right to petition" claim based on alleged violation of the First Amendment (Eleventh and Twelfth Causes of Action). Plaintiff asserts no state law claims[7] and asserts jurisdiction solely on the basis of federal question and civil rights. Despite devoting 97 pages to the effort, the Amended Complaint fails to state a claim upon which relief can be granted for any of these five basic claims.

### a. *The Amended Complaint fails to state a takings claim.*

This argument begins with Plaintiff's takings claim because in a sense, it is the central claim in the Amended Complaint, *viz.*, that the Municipal Defendants have taken Plaintiff's constitutionally-protected property rights by reclassifying a portion of TH 26 into Crane Brook Trail and by using the Vermont state courts to maintain that reclassification.

> [T]he federal and Vermont Constitutions use virtually the same test for takings review. In order to state a claim under the Takings Clause, a plaintiff must sufficiently plead: (1) a protected property interest; (2) that has been taken under color of state law; (3) without just compensation. A plaintiff is no longer required to exhaust state procedures for obtaining just compensation before bringing her takings claims to federal court.

*Martell v. City of St. Albans*, 441 F. Supp. 3d 6, 21 (D. Vt. 2020) (internal citations and quotation marks omitted). Plaintiff fails to sufficiently plead that a protected property interest has been taken from him without just compensation.

---

[7] Plaintiff references Article 2 and Article 7 of the Vermont Constitution without any articulation of such a claim premised under either Article. *See* p. 20, n.9, infra.

A fair reading of the Amended Complaint and reference to Plaintiff's requested relief suggests that the takings claim is squarely based on the Municipal Defendants' decision to reclassify TH 26 as Crane Brook Trail and to prohibit vehicular traffic over the trail, thereby depriving Plaintiff of his Southern Access Route. *See* Doc. at ¶ J (requesting relief appearing to compensate Plaintiff for the Crane Brook Trail decision). In particular, Plaintiff contends that the Municipal Defendants have taken his "reversionary property rights" by reclassifying the middle segment of TH 26 as a trail instead of discontinuing it:

> The 2010 New Road Reclassification, instead of discontinuing a segment of TH26, functionally condemned a 49.5' wide swath of private property to simultaneously deny landowners reversionary property rights and rescind past, present, and prospective future accessibility to private property.

Doc. 46 at ¶ 123; *see also* ¶¶ 125; 254; I and J (making argument). This argument gravely misconstrues the nature of a public right of way.

It is clear that the Town has already justly compensated landowners for the takings necessary to create TH 26. Under Vermont law, a selectboard must compensate a landowner when a municipality lays out a public highway through the landowner's property. 19 V.S.A. § 712. If the landowner is dissatisfied with the damages the selectboard offers, the landowner may appeal those damages under 19 V.S.A. Chapter 7, Subchapter 3. Vermont law has provided this basic protection since its very first statutes. Accordingly, if TH 26 *is* a valid public right of way, as Plaintiff alleges, then, under applicable statutes, Plaintiff's predecessor in title, who owned the property at the time TH 26 was laid out, received damages for the original taking of the right of way and its devotion to public use. Plaintiff does not allege otherwise.

Under Vermont law, once a highway is devoted to public use, it remains in public use until the municipality terminates the public right of way by discontinuing it as a highway and

declining to designate the right of way as a trail. 19 V.S.A. § 775.[8] Only then is a landowner's reversionary right triggered. *Id*. Until the municipality releases the public's interest in the right of way, the right of way remains open to the public 24 hours a day, even if the right of way is devoted solely to pedestrian traffic. *See Baird v. City of Burlington*, 2016 VT 6, ¶4, 201 Vt. 112, 115 ("Despite having the character of an outdoor pedestrian mall, Church Street is nevertheless a public right-of-way and is accessible to the public twenty-four hours a day.").

Nothing has been taken from Plaintiff that was not already taken from his predecessors in title. The portion of TH 26 that is now Crane Brook Trail was a public right of way open to public use *before* the 2010 reclassification and remains a public right of way *after* the 2010 reclassification—the only change has been in the character of the public use from vehicular roadway to pedestrian trail. Conversely, Plaintiff had no ability to exclude the public from using TH 26 *before* the 2010 reclassification, and he has no ability to exclude the public from its use *after* its reclassification—his position with respect to control over the public right of way remains unchanged. "[D]owngrading a road does not involve a taking." *Ketchum v. Town of Dorset*, 2011 VT 49, ¶13, 190 Vt. 507, 510.

The only practical change is that Plaintiff can no longer drive a vehicle over the Southern Access Route, although he retains vehicular access to his property over the Class IV segment of TH 26 to the north. Although Plaintiff views that northern route as unreasonable and prefers to access his property over the Southern Access Route, Plaintiff has no constitutional right to his

---

[8] 19 V.S.A. § 775 reads in full: "§ 775. Title to discontinued highway. The selectmen shall notify the commissioner of forests, parks and recreation when they have filed a petition to discontinue a highway under this subchapter. The selectmen may designate the proposed discontinued highway as a trail, in which case the right-of-way shall be continued at the same width. The commissioner of forests, parks and recreation with the approval of selectmen, may also make this designation. If the discontinued highway is not designated as a trail, the right-of-way shall belong to the owners of the adjoining lands. If it is located between the lands of two different owners, it shall be returned to the lots to which it originally belonged, if they can be determined; if not, it shall be equally divided between the owners of the lands on each side."

"preferred" access. Similarly, although Plaintiff enjoys a common law right of access to Crane Brook Trail as an abutting landowner, the Town has no obligation to maintain the trail to provide Plaintiff with the kind of access over the trail that he would prefer. *See Okemo Mt., Inc. v. Town of Ludlow*, 171 Vt. 201, 209-210 (2000) (holding that, although landowner had a common law right to access a public road, "We are not suggesting that [the landowner] has a right to require the Department to plow the road for his access by automobile in the winter.").

By referencing *In re Town Highway No. 20*, 2012 VT 17, 191 Vt. 231, Doc. 46 at ¶ 115, Plaintiff may hope to equate the reclassification in the present case with the reclassification in *In re Town Highway No. 20* and argue that the reclassification here somehow violates Plaintiff's constitutional rights. However, this case differs from *In re Town Highway No. 20* in key respects.

First, it is important to note that *In re Highway No. 20* does not say that reclassifying a road to a trail is a taking. *See In re Town Highway No. 20*, 2012 VT 17, ¶47, 191 Vt. 231, 259 ("Having ultimately recognized the Unnamed Road as a town highway, the selectboard's decision to downgrade its status to a trail did not — as we have elsewhere held — constitute a 'taking' entitling abutting landowners to compensation."). Rather, the case involved a claim under Article 7 of Vermont's Constitution, which "finds no precise analog among the rights provided by the U.S. Constitution." *In re Town Highway No. 20*, 2012 VT 17, ¶63 n.10, 191 Vt. 231, 267 n.10. Plaintiff brings no such claim here.[9]

Moreover, *In re Town Highway No. 20* involved a "lengthy pattern of invidious delay, obstruction, and discriminatory decisionmaking" by the Georgia selectboard. *In re Town*

---

[9] Although the Amended Complaint references Articles 2 and 7 of the Vermont State Constitution, *see* Doc. 46 at ¶¶ 112-113, Plaintiff brings no such claims in his Causes of Action. Instead, he attempts to shoe-horn those two Articles into a Claim under the Ninth Amendment. Doc. 46 at ¶ 112. The relationship between Article 2 and Article 7 and the Ninth Amendment is not clear, considering that the Ninth Amendment is "a rule of construction that does not give rise to individual rights." *Zorn v. Premiere Homes, Inc*., 109 Fed. Appx. 475, 475, 2004 U.S. App. LEXIS 20329, *2 (2d Cir. 2004)

*Highway No. 20*, 2012 VT 17, ¶47, 191 Vt. 231, 259. The pattern of decisions included, among

other things, removing without explanation a culvert from plaintiff's access road, thereby

preventing plaintiff from accessing his property; refusing the plaintiff's request to upgrade Town

Highway No. 20 (TH 20) at plaintiff's own expense, when the selectboard had granted similar

requests to other landowners with lesser showings; granting permission to the plaintiff's

neighbors to store their personal property on TH 20, further impeding plaintiff's access to his

property; and refusing to require the neighbors to remove a fence and barbed wire gate they

erected—with all these selectboard decisions being made for the express purpose of increasing

the value of the neighbor's property while decreasing the value of the plaintiff's. *In re Town*

*Highway No. 20*, 2012 VT 17, ¶3- ¶9, 191 Vt. 231, 238-241. These persistent, intermittent, and

repeated choices covered a span of over a decade. *In re Town Highway No. 20*, 2012 VT 17, ¶21,

191 Vt. 231, 245-246.

No such pattern of discriminatory decision making exists here. In contrast, the Town

Selectboard's action with respect to Crane Brook Trail have been straightforward and consistent.

The Selectboard attempted to reclassify a portion of TH 26 as a trail in 2001, treated the segment

as a trail until 2010, then once again reclassified the same segment as a trail after Plaintiff

challenged the 2001 reclassification as invalid. Since then, the Town has consistently treated

Crane Brook Trail as a trail. There are no allegations of a series of invidious refusals, denials,

and obstructions like those in *In re Town Highway No. 20*. Rather, Plaintiff here complains that

the Town has persisted in its decision to keep Crane Brook Trail a trail.

Because Plaintiff has not demonstrated that a protected property interest has been taken

from him without just compensation, the takings claim must fail and the Fifth and Sixth Causes

of Action must be dismissed.

### b. The Amended Complaint fails to state a procedural due process claim.

> A procedural due process claim requires proof of two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012). These elements derive from the Due Process Clause of the Fourteenth Amendment, which prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

*Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 295 (D. Vt. 2013). Plaintiff cannot prove he was deprived of a property interest or that he was denied due process.

Plaintiff's procedural due process claims are based entirely on either the access and maintenance issues related to Crane Brook Trail, Doc. 46 at ¶ 247, or on Plaintiff's claim that *Ketchum* represents an unconstitutional interpretation of Vermont law that creates a "deferential administrative review" that fails to provide adequate due process in "narrowly defined state court proceedings," Doc. 46 at ¶ 248.

First, as discussed extensively above in connection with Plaintiff's takings claim, Plaintiff has not identified any protected property interest of which he has been "deprived" in connection with the 2010 reclassification of Crane Brook Trail. TH 26 is a public right of way today, as it was before it was reclassified. Although the character of that public use has changed, Plaintiff had no right to unilaterally direct the public use of TH 26, and Plaintiff has not been deprived of vehicular access to his property, which he enjoys over TH 26 and Irish Settlement Road to the north.

Second, the process which Plaintiff has enjoyed in Vermont state courts, which involved four separate state court actions and 12 years of litigation, was adequate for constitutional due process purposes.

> For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental

that the right to notice and an opportunity to be heard must be granted at a
meaningful time and in a meaningful manner.

*Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994 (1972).

Here, Plaintiff brought the 2010 Trail Maintenance Case and the 2012 Class 4
Maintenance Case and was the master of his own Complaints (along with the other plaintiffs). In
these cases, he had the opportunity to present his claims to the County Road Commissioners and
to present evidence in support of those claims. Doc. 46 at ¶¶ 4 and 50. He also had the
opportunity to participate in the Town's 2010 reclassification proceeding and presented evidence
in support of his own 2016 subdivision application. After these opportunities to be heard,
Plaintiff appealed both the 2010 Reclassification Appeal and the 2016 Subdivision Appeal up
through the Vermont Supreme Court. Even the Rule 75 appeal process included the possibility of
*de novo* review by the reviewing court. *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶9, 191
Vt. 76, 81 (noting the opportunity for a *de novo* proceeding under V.R.C.P. 75(c)). These
proceedings—even the more limited review under V.R.C.P. 75—are sufficient for due process
purposes. *Gauthier v. Kirkpatrick*, 2013 U.S. Dist. LEXIS 172578, *62 (D. Vt. 2013) (dismissing
due-process claim because judicial review was available under V.R.C.P. 75—a "meaningful"
remedy).

Plaintiff has failed to state a procedural due process claim in the Amended Complaint and
for this reason, the First and Second Causes of Action should be dismissed.

### c.  *The Amended Complaint fails to state a substantive due process claim.*

Plaintiff's substantive due process claims, like his procedural due process claims, are also
based on the allegations concerning the maintenance and reclassification of Crane Brook Trail.
*See* Doc. 46 at ¶¶ 109-111 and ¶¶ 252-259. They therefore suffer from the same central defect:

Plaintiff has not identified a constitutionally protected interest he has lost as a result of the reclassification of Crane Brook Trail.

In addition, to "establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 2d Cir.) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Moreover, "'[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Montagno v. City of Burlington*, 2017 U.S. Dist. LEXIS 83679, *30, 2017 WL 2399456 (quoting *Albright v. Oliver*, 510 U.S. 266 (1994)); *also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process.").

Here, because Plaintiff's substantive due process claims are based entirely on the alleged Fifth Amendment takings resulting from the reclassification of Crane Brook Trail, "his substantive due process claim is 'either subsumed in [his] more particularized allegations, or must fail.'" *Montagno*, 2017 U.S. Dist. LEXIS 83679, *31-32, 2017 WL 2399456 (*quoting Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005)).

For these reasons, Plaintiff's Third and Fourth Causes of Action must be dismissed.

### d. *The Amended Complaint fails to state a claim for censorship and manipulation of public records.*

The Amended Complaint's "censorship and manipulation of public records" claims are based on allegations that Municipal Defendants distort, diminish, or omit Plaintiff's participation

in public meetings from the public record, such as meeting minutes.[10] Plaintiff also alleges that the Town refuses to make certain records available on the internet.[11] The difficulty with Plaintiff's censorship and manipulation of public records claims is that there is *no* constitutionally-protected interest in these allegations. "The inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury under the due process clause of the Fourteenth Amendment." *Steuerwald v. Cleveland*, 2015 U.S. Dist. LEXIS 44246, *18 (D. Vt. 2015). Indeed, the Northern District of New York concluded that a plaintiff failed to state a claim under the Ninth or Fourteenth Amendments even when a university police officer allegedly entered false information concerning a plaintiff into police reports and refused to correct or redact the false information. *Tylicki v. Schwartz*, 2009 U.S. Dist. LEXIS 73263, *9-10 (N.D.N.Y. 2009).

Furthermore, although Plaintiff may have a right to access public records in accordance with Vermont's Public Records Act, 1 V.S.A. § 315, *et seq.*, he does not have a constitutionally protected right to access such public records *online*. *See Lancaster v. Harris Cty.*, 821 Fed. Appx. 267, 271, 2020 U.S. App. LEXIS 21440, *9 (5th Cir. 2020) ("As for Claim 6 [for a conspiracy to cover up civil-rights violations by deleting online records], the briefing is devoid of a case even hinting at the right to access state-court-protective-order records online.").

The allegations do not state a cause of action under the First Amendment, nor do they state a cause of action for procedural due process or substantive due process under the Fourteenth Amendment. For these reasons, the Seventh and Eighth Causes of Action must be dismissed.

---

[10] *See* Doc. 46 at ¶¶ 172-179, 183, 200, 202-207.
[11] Doc. 46 at ¶¶ 97-104.

      **e.**  *The Amended Complaint fails to state a constitutional violation of Plaintiff's First Amendment right to petition.*

In his Eleventh Cause of Action, Plaintiff alleges a claim under 42 U.S.C. § 1983 based on a violation of the First Amendment Right to Petition Clause, alleging "Defendants refusing to abide by duly submitted petitions, including the 2010 Petition on Fairness or the 2020 Petition on Public Accountability." Doc. 46 at ¶ 280. The "2010 Petition of Fairness" is a petition allegedly filed with the Town in 2010. *Id.* at ¶¶ 239 and 245. The "2020 Petition on Public Accountability," filed in 2020, is "Plaintiff's most recent" Petition. *Id.* at § 245.

Plaintiff's Amended Complaint alleges that the Town and certain named defendants did not "abide" by Plaintiff's "demands" as expressed in Plaintiff's lawfully submitted petitions. *See id.* at ¶ 240 (alleging defendants "refused to *abide by the demands* of the 2010 Petition on Fairness in Town Road Maintenance.") and ¶ 241 (alleging defendants "refused to *abide by the demands* of the 2020 Petition on Public Accountability" (emphasis added); *also id.* at ¶ 280 (alleging "Defendants refus[ed] to abide by duly submitted petitions"). These claims are premised on the notion that Plaintiff has the right to have any "demands" contained in a lawfully submitted petition implemented by the officials receiving the petitions.

Plaintiff has no such Constitutional right. The United States Supreme Court made this point clear in *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984):

> Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues. Indeed, in *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 464-466 (1979), the Court rejected the suggestion. No other constitutional provision has been advanced as a source of such a requirement. Nor, finally, can the structure of government established and approved by the Constitution provide the source. It is inherent in a republican form of government that direct public participation in government policymaking is limited. *See* The Federalist No. 10 (J. Madison). Disagreement with public policy and disapproval of officials' responsiveness, as Justice Holmes suggested in Bi-Metallic, supra, is to be registered principally at the polls.

*Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984).

The Second Circuit has applied *McKnight* to cases, like the present case, in which the plaintiffs alleged violations of the First Amendment's right to petition based on the failure of state, county or local officials to respond to the plaintiffs' petitions. E.g., *Futia v. Westchester Cty. Bd. of Legislators*, 2021 U.S. App. LEXIS 11589, *3-4, __ (2d Cir. 2021); *Futia v. New York*, 837 Fed. Appx. 17, 20, 2020 U.S. App. LEXIS 37156, *3 (2d Cir. 2020). Plaintiff alleges that the Town refused to "abide by the demands" of his Petitions. Such refusal does not state a claim upon which relief may be granted under the First Amendment.

Furthermore, any claim Plaintiff may have based on the defendants' failure to "abide by the demands" of the 2010 Petition would be time-barred.[12] As a general rule, § 1983 actions related personal deprivations are subject to the statute of limitations for personal injury claims of the state in which the alleged violation occurred, which, for Vermont is three years. 12 V.S.A. § 512; *Irina Assur v. Cent. Vt. Med. Ctr.*, 2012 U.S. Dist. LEXIS 185260, *18 (D. Vt. 2012); *Brewer v. Hashim*, 2017 U.S. Dist. LEXIS 98884, *24 (D. Vt. 2017). According to the Complaint, Plaintiff's 2010 Petition was submitted in 2010 and "could have prevented over a decade of state litigation and many of the present causes of action." Am. Compl. at ¶ 239. Plaintiff alleges that the Town and other defendants "refused to abide" by the 2010 Petition. Am. Compl. at ¶ 280. This claim, being over 11 years old, is barred by the three-year statute of limitations.

Finally, although the Complaint alleges only Federal claims and does not assert any *state law* claims, it is worth noting that the Town's handling of Plaintiff's 2020 petition does not violate Vermont state law. 17 V.S.A. § 2642 is the Vermont law governing Plaintiff's petitions in

---

[12] The statute of limitations is addressed extensively with regard to other claims below.

this case. Under Section 2642, selectmen must "warn any article or articles requested by a petition signed by at least five percent of the voters of the municipality and filed with the municipal clerk not less than 47 days before the day of the meeting." 17 V.S.A. § 2642. However, the Vermont Supreme Court has construed this statute to require warning only of those items that are within the "voters' authority to decide" at Town meeting. *See Skiff v. S. Burlington Sch. Dist.*, 2018 VT 117, ¶24, 208 Vt. 564, 574-575. The selectmen have no legal duty to warn or include "advisory" articles that call for action beyond the scope of the voter's authority.

Plaintiff expressly acknowledges that the 2020 Petition contained "non-binding," "advisory" articles that the Underhill selectboard was not bound by Vermont law to warn or include in the town meeting. Am. Compl. at ¶ 237 (describing requested articles as "*non-binding*") (emphasis in original); ¶ 257 (alleging town officials "prevented three *non-binding advisory articles* to the ballot be voted on March 4, 2021) (emphasis added); ¶ T (requesting injunctive relief requiring "*Advisory-Articles* to be properly warned and placed on the ballot to be voted upon Town Meeting Day") (emphasis added).

Because Plaintiff has not stated a claim upon which relief may be granted for a violation of the First Amendment right to petition, the related Monell claim against the Town also fails. *E.g., Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Sims v. City of New York*, 788 Fed. Appx. 62, 64, 2019 U.S. App. LEXIS 37218, *6 (2d Cir. 2019).

Plaintiff's Eleventh and Twelfth Causes of Action therefore must be dismissed.

####    f.   The Amended Complaint fails to state any claim for collusion or conspiracy.

Finally, it should be noted that the Amended Complaint repeatedly alleges that the defendants have colluded and/or conspired to violate his constitutional rights.[13] The Ninth Cause of Action appears to focus these allegations on Defendant JULT and on the individual defendants referenced in ¶ 274.[14] Plaintiff cites 42 U.S.C. § 1983 as the foundation of this claim, but conspiracy claims are not available under § 1983; rather, they are available under 42 U.S.C. § 1985(3).

However, Plaintiff's Amended Complaint fails to state a claim under § 1985(3) because Plaintiff must allege and show that the alleged conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus," such as "race, color, gender, sex, veteran status, or disability status." *Doe v. Fenchel*, 837 Fed. Appx. 67, 68, 2021 U.S. App. LEXIS 5220, *3 (2d Cir. 2021). Moreover, a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).

Here, Plaintiff's Amended Complaint makes *no* allegation that a conspiracy was motivated by racial or class-based discriminatory animus or that Plaintiff is a member of a protected class. Therefore, the Ninth Cause of Action must be dismissed.

### C.  Plaintiff's claims are barred by applicable statutes of limitations.

The preceding discussion demonstrates that the Amended Complaint fails to state a claim upon which relief can be granted against the Municipal Defendants. As a separate and

---

[13] *See* Am. Compl. at ¶¶ 1, 110, 111, 143, 164, 166, and 212.

[14] Although Plaintiff does not expressly name these defendants as targets of the Ninth Cause of Action, excess of caution and the liberal construction that *pro se* complaints receive require that these defendants respond to the claims here.

independent ground for dismissal, Plaintiff's claims must be dismissed because they are barred

by the applicable statute of limitations. To demonstrate this, a brief summary of the limitation's

principles applicable to § 1983 claims is necessary.

### a. *The applicable law indicates that Plaintiff's claims are subject to a three-year statute of limitations.*

First, in general, 42 U.S.C. § 1983 actions are subject to the statute of limitations

applicable to personal injury claims in the state in which the tort is alleged to have occurred,

which, in Vermont, is three years, as provided in 12 V.S.A. § 512(4). *E.g.*, *Owens v. Okure*, 488

U.S. 235, 249-250 (1989); *Tester v. Pallito*, 2020 U.S. Dist. LEXIS 95092, *7 (D. Vt. 2020);

*Miller v. Vt. Assocs.*, 2021 U.S. Dist. LEXIS 27307, *7 (D. Vt. 2021); *Brewer v. Hashim*, 2017

U.S. Dist. LEXIS 98884, *24 (D. Vt. 2017). A takings claim is governed by the general six-year

statute of limitations in 12 V.S.A. § 511. *Dep't of Forests, Parks & Rec. v. Town of Ludlow*

*Zoning Bd.*, 2004 VT 104, ¶6, 177 Vt. 623, 626.

Second, although the limitations period of a § 1983 claim is determined by reference to

state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not

resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384 (2007). "Generally, under

federal law, a cause of action accrues when 'the plaintiff knows or has reason to know of the

injury which is the basis of his action.'" *Finley v. Hersh*, 2013 U.S. Dist. LEXIS 95159, *10 (D.

Vt. 2013) (citing *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)).

Third, "when a federal court looks to state law to determine the most appropriate statute

of limitations, it must also, so long as federal policy is not thereby offended, apply the state's

rules as to the tolling of the statute." *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987)

(citing *Chardon v. Fumero Soto*, 462 U.S. 650, 655-62, 77 L. Ed. 2d 74 (1983)); *also Abbas v.*

*Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). Vermont's tolling statute appears at 12 V.S.A. § 551 *et seq.* None of Vermont's tolling provisions applies to the claims in Plaintiff's Complaint.

Fourth, "'[a]lthough the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" *Powell v. Lab Corp.*, 789 Fed. Appx. 237, 239, 2019 U.S. App. LEXIS 29845, *3 (2d Cir. 2019) (summary order) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)); also *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) ("A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleadings stage 'if [the] complaint clearly shows the claim is out of time.'") (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

Fifth, "exhaustion is not a prerequisite to an action under § 1983." *Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982); *also Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2173 (2019); *West v. Morrisville*, 728 F.2d 130, 136 n.2 (2d Cir. 1984); *Brown v. Windham Northeast Supervisory Union*, 2006 U.S. Dist. LEXIS 65884, *60-61 (D. Vt. 2006). As a result, Plaintiff was not required to wait for state court litigation to run its course before bringing these claims.

Sixth, Plaintiff's claims against each individual defendant are subject to the rules governing statute of limitations, accrual, tolling, and exhaustion of remedies. As a result, claims based on individual conduct that occurred more than three years prior to the filing of the Complaint are time-barred unless tolled for some reason. *See Powell v. Lab Corp.*, 789 Fed. Appx. 237, 239-240, 2019 U.S. App. LEXIS 29845, *2-4 (2d Cir. 2019) (analyzing statute of limitations issue with reference to defendant's individual conduct as alleged in complaint).

Finally, the existence of an alleged conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs." *Singleton v. New York*, 632 F.2d 185,

192 (2d Cir. 1980); *Powell v. Lab Corp.*, 789 Fed. Appx. 237, 240, 2019 U.S. App. LEXIS

29845, *3-4 (2d Cir. 2019); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995).

Accordingly, a plaintiff cannot use a conspiracy theory to "circumvent the statute of limitations,"

*Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156-1157 (2d Cir. 1995).

Plaintiff's Complaint was filed on June 21, 2021. If we apply the longer, six-year statute

of limitations (for takings) to all of Plaintiff's claims (although some are actually governed by

the three-year period), then any claim premised on conduct that occurred before June 21, 2015, is

barred by the statute of limitations and is not actionable, unless tolled by Vermont state law.

> ### b. *All of Plaintiff's claims based on vehicular access to, maintenance of, and reclassification of Crane Brook Trail are barred by the six-year statute of limitations.*

Turning to the specific claims in the Complaint, all of Plaintiff's specific factual

allegations related to the Town's efforts to eliminate vehicular traffic from Crane Brook Trail

occurred during or *prior* to 2010.

First, Plaintiff alleges that the Town and various defendants failed to keep a promise,

allegedly made in 2001, that Plaintiff would be entitled to retain vehicle access to his property

over Crane Brook Road and the Southern Access Route.[15] However, any promise the Town may

have made to Plaintiff was broken when the Town attempted to reclassify the Southern Access

Route as a trail in 2001, when the Town adopted the Trails Ordinance in 2002, and when the

Town reclassified the Southern Access Route as a trail in 2010.

Similarly, any claim based on Plaintiff's allegation that the Town and various defendants

deliberately failed to maintain Crane Brook Trail during the period 2001 to 2010 is also barred.

If, as Plaintiff alleges, the 2001 reclassification effort was invalid and the Town had a duty to

---

[15] See, generally, Am. Compl. at ¶¶ 1, 44, 45, 53, 54, 55, 78, 89, 117, 120, 127, 129, 138, 139, 141, 188, 248, and J.

maintain the Southern Access Route between 2001 and 2010, then claims based on that conduct accrued throughout the early 2000s and reached full boil on May 31, 2011, the date Plaintiff contends the 2001 reclassification effort was invalidated by a Vermont superior court. *See* ¶ 50 (citing this date as date of judicial determination of invalidity). If the Town's failure to maintain the road violated any of Plaintiff's constitutional rights, then the basis for recovery was clear as of that date. Any § 1983 claim based on the Town's failure to maintain the Southern Access Route expired on May 31, 2017—six years later.

Likewise, if the Town violated Plaintiff's constitutional rights by wrongly reclassifying the disputed portion of TH 26 as a trail in 2010, thereby depriving Plaintiff of the "reasonable access" he hoped to retain,[16] then a claim based on that action expired six years later—in 2016.

All of this alleged conduct-- that the Town promised Plaintiff in 2001 that he would retain vehicular access over Crane Brook Trail, that the Town deliberately and improperly failed to maintain TH 26 during the early 2000s, and that the Town improperly reclassified Crane Brook Road to a legal trail in 2010, all occurred well before June 21, 2015, which is the cut-off date for a § 1983 takings claim brought in Vermont on June 21, 2021. Therefore, any claims based on this specific conduct are barred by the six-year statute of limitations in 12 V.S.A. § 511.

Major portions of Plaintiff's First, Second, Third, Fourth, Fifth and Sixth Causes of Action are based on the maintenance and road classification decisions made by Town officials from 2001-2010. Plaintiff's "General Allegations" and "General Chronology of Facts Relevant to the Present Claims" are entirely related to pre-2010 conduct. *See* Doc. 46 at ¶¶ 46-67. Other than referencing the February 26, 2021, decision in the 2016 Subdivision Appeal, this section of

---

[16] See, generally, Am. Compl. at ¶¶ 53-59 and ¶¶ 79-84, 105-111, 120, 123-168.

Plaintiff's Complaint does not allege any dated conduct later than 2013 (the date of the findings of the Chittenden County Road Commissioners referenced in ¶ 50.B).

Similarly, when one examines the allegations provided in support of the first six Causes of Action, see Doc. 46 at ¶¶ 87-190, the overwhelming majority of the dated allegations of conduct reference events that occurred well before June 21, 2021.[17] Those allegations that do allege conduct occurring after June 21, 2018 refer to Plaintiff's First Amendment claims, rather than his access and maintenance claims.[18] From this review of Plaintiff's stated bases for claims First through Sixth, it is apparent that those claims are barred by the six-year statute of limitations as to all Municipal Defendants to the extent they are based on pre-2015 conduct.[19]

### c.  February 26, 2021 is not the accrual date for Plaintiff's claims.

Plaintiff, apparently mindful of the statute of limitations issue, alleges that the accrual date for his "present claims" should be February 26, 2021, because that is the date that the Vermont Supreme Court ruled against Plaintiff in his 2016 Subdivision Appeal. Doc. 46 at ¶ 85; see also Demarest v. Town of Underhill, 2021 VT 14, ¶33 (February 26, 2021, decision). The Amended Complaint cites language from dissenting Justice Robinson's opinion as embodying the reasons why the decision date should be the accrual date. Doc. 46 at ¶ 85. However,

> Under federal law, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace, 549 U.S. at 388 (citations and internal quotation marks omitted). Stated

---

[17] The dated allegations referencing pre-June 21, 2018 conduct include: ¶ 91 (2002), ¶ 100 (2007, 2009, 2012, 2016); ¶ 101 (2009); ¶ 103 (2009); ¶ 106 (2010); ¶ 107 (early 2000's); ¶ 111 (2010); ¶ 115 (2012); ¶ 120 (2002); ¶ 123 (2010); ¶ 125 (pre-2002); ¶ 134 (2002); ¶ 135 (2002); ¶ 136 (2002); ¶ 139 (2002); ¶ 140 (2002); ¶ 142 (2009); ¶ 144 (2002); ¶ 145 (2002); ¶ 146 (2002); ¶ 152 (2005); ¶ 158 (2010); ¶ 162 (2010); ¶ 164 (2010); ¶ 165 (2010); ¶ 168 (Town's decision to appeal in 2016 Subdivision Appeal); ¶ 182 (2009).

[18] The post-June 21, 2020 allegations include: ¶ 172 (2019, erroneous matrix by Rick Heh); ¶ 173 (2019, erroneous minutes of Planning Commission meeting); ¶ 177 (2019, demoralizing email from Jonathan Drew); ¶ 178 (2019, omission of hostile email); ¶ 179 (2019, incomplete meeting minutes); ¶ 181 (2020, posting agenda to Front Porch Forum); ¶ 183 (2020, excluding Plaintiff's speech from minutes); ¶ 186 (2020, selectboard meetings); ¶ 187 (2020, scheduling selectboard meeting for 8:30 a.m.).

[19] As shown above, the post-2018 allegations also fail to state a claim upon which relief may be granted.

> differently, the claim accrues and thus the statute of limitations begins to run, "when the wrongful act or omission results in damages[,] . . . even though the full extent of the injury is not then known or predictable." *Id.* at 391 (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526-27 (1991) (footnote omitted)). The Second Circuit explained that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted); *see Holiday v. Martinez*, 68 Fed. Appx. 219, 2003 WL 21242641, at *2 (2d Cir. 2003) (three-year statute of limitations applies to § 1983 due process claim, which accrues when plaintiff knows or has reason to know of the injury which is the basis of his action).

*Brewer v. Hashim*, 2017 U.S. Dist. LEXIS 98884, *24-25, 2017 WL 2787622.

When Plaintiff filed his 2016 Subdivision Appeal, he was aware of all of the factual allegations discussed above—that the Town had attempted to reclassify Crane Brook Trail in 2001, that the Municipal Defendants had failed to maintain Crane Brook Trail from 2001 to 2010, that the Town reclassified Crane Brook Trail once again in 2010, that the Town had maintained the Class 4 portion of TH 26 in a manner that Plaintiff thought was insufficient, and that the Town had denied his request for vehicular access over Crane Brook Trail. The Complaint includes *no* allegations concerning the Municipal Defendants' conduct in these matters occurring later than 2010. In fact, the Amended Complaint makes no specific factual allegations concerning the period from 2015 on, except allegations related to the fact that the Town *litigated* the 2016 Subdivision Appeal or allegations related to the First Amendment public record and petition claims. There is no factual basis for Plaintiff's claims accruing on the date the Vermont Supreme Court issued its final decision in the 2016 Subdivision Appeal.

To stretch the accrual date out to February 2021, Plaintiff may hope to avail himself of the "continuing violation doctrine," which is an "exception to the normal knew-or-should-have-known accrual date of a discrimination claim" that applies "when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) (internal quotation marks

and citations omitted). However, to demonstrate that the exception is applicable, "the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). Here, Plaintiff does not allege any specific "non-time-barred" factual allegations related to the vehicular access issue. Any denial of due process or taking by the Municipal Defendants related to Crane Brook Trail occurred no later than 2010, when the Town re-reclassified Crane Brook Trail. The Vermont state courts' later judicial consideration of that issue, and the Vermont Supreme Court's ultimate conclusion that Plaintiff's 2016 Subdivision Appeal was barred by claim preclusion does not in any way change the accrual date for purposes of Plaintiff's federal § 1983 claims based on the denial of vehicle access over Crane Brook Trail.

For all the reasons above, the accrual date in this action is not February 21, 2021, and any claim related to denial of vehicular access over Crane Brook Trail is barred by the applicable statute of limitations.

### d. Claims against certain individual defendants are also barred by the statute of limitations.

The argument above is generally applicable to *all* the Municipal Defendants. However, it should be noted that the reasoning is equally applicable to each individual defendant. For seven individual Municipal Defendants, Plaintiff's Amended Complaint only asserts allegations of specific conduct that occurred before June 21, 2015.[20] Because these allegations occurred more

---

[20] For each Defendant, the following lists the name of the Defendant, the paragraphs in which each Defendant is specifically named, and, for each allegation, the year in which the allegation occurred:

1. Peter Brooks: ¶ 46; ¶ 54 (2002), ¶ 135 (2002); ¶ 144 (2002);
2. Carolyn Gregson: ¶ 55 (2001-2002); ¶ 121; ¶ 135 (2002); ¶ 144 (2002); ¶ 173; ¶ 144 (2002);
3. Stan Hamlet: ¶ 46; ¶ 55 (2001-2002); ¶ 59 (2010); ¶ 111 (2010); ¶ 135 (2002); ¶ 139 (2002); ¶ 152 (2005); ¶ 155 (2005); ¶ 194 (2005); ¶ 207;
4. Steve Owens: ¶ 47 (2009); ¶ 57 (2009); ¶ 59 (2010); ¶ 73 (2010-2013), ¶ 74 (2010); ¶ 240 (2010);
5. Clifford Peterson: ¶ 168 (2012-2016, referencing decision to appeal the trial court order in the 2012 Class 4 Maintenance Case); ¶ 207;
6. Trevor Squirrell: ¶ 47 (2009); ¶ 57 (2009); ¶ 59 (2010); ¶ 111 (2010);

than six years before the date of Plaintiff's Complaint, the claims against Defendants Brooks,

Gregson, Hamlet, Owens, Peterson, Squirrell, and Tedford are barred by the six-year statute of

limitations.

**D. All of Plaintiff's claims based on vehicular access to, maintenance of, and reclassification of Crane Brook Trail are barred by the doctrine of claim preclusion.**

Even if the claims related to Crane Brook Trail are not time-barred, they would still be

barred as to the Town by the doctrine of claim preclusion. The Second Circuit summarized the

elements of claim preclusion in a prior 42 U.S.C. § 1983 case arising from Vermont:

> "[A] federal court must give to a state-court judgment the same preclusive effect
> as would be given that judgment under the law of the State in which the judgment
> was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104
> S. Ct. 892, 79 L. Ed. 2d 56 (1984); *accord O'Connor v. Pierson*, 568 F.3d 64, 69
> (2d Cir. 2009). In Vermont, *res judicata* will preclude a claim from being litigated
> "if (1) a previous final judgment on the merits exists, (2) the case was between the
> same parties or parties in privity, and (3) the claim has been or could have been
> fully litigated in the prior proceeding." *Iannarone v. Limoggio*, 190 Vt. 272, 279,
> 30 A.3d 655 (2011) (internal quotation marks omitted); *see also Carlson v. Clark*,
> 185 Vt. 324, 331, 970 A.2d 1269 (2009) ("[U]nder the doctrine of claim
> preclusion, a final judgment in previous litigation bars subsequent litigation if the
> parties, subject matter, and cause(s) of action in both matters are the same or
> substantially identical." (internal quotation omitted)).

*Steuerwald v. Cleveland*, 651 Fed. Appx. 49, 50, 2016 U.S. App. LEXIS 10333, *1-2 (2d Cir.

2016); *also Madden v. Town of New Haven*, 2015 U.S. Dist. LEXIS 91076, *13-14 (D. Vt.

2015).

Here, claim preclusion applies as to any claim against the Town as to both the

maintenance claims and the reclassification claims. A previous final judgment on the merits

exists on both issues in the 2010 Trail Maintenance Case and the 2010 Reclassification Appeal.

These two cases reached a previous final judgment on the merits, were between the same parties,

---

7.   Walter "Ted" Tedford: ¶ 135 (2002).

and the claims presented here were or could have been fully litigated in the prior proceedings. This, in fact, is the conclusion the Vermont Supreme Court reached in February of this year with respect to the issue of vehicular access over Crane Brook Trail. *Demarest v. Town of Underhill*, 2021 VT 14, ¶20.

### E. The Amended Complaint must be dismissed as to 12 defendants because the Amended Complaint alleges *no* conduct on their part.

The Amended Complaint contains *no* specific factual allegations concerning 12 of the individual Municipal Defendants.[21] In the Second Circuit, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501, 1994 U.S. App. LEXIS 6641, *16-17 (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and citing other cases). Because Plaintiff's Amended Complaint contains no allegations specifically regarding these defendants, the claims must be dismissed. *E.g., Gregoire v. Citizens Bank*, 2020 U.S. Dist. LEXIS 149776, *7 (D. Vt. 2020); *Levesque v. Vermont*, 2014 U.S. Dist. LEXIS 127916, *13 (D. Vt. 2014).

Because the Amended Complaint fails to state a claim against Defendants Bond, Greene, Ingulsrud, Johnson, Oman, Pacifici, Seybolt, St. Germain, Weisel, and Yerrick, the Amended Complaint should be dismissed in its entirety as to these Defendants.

### F. Plaintiff's Amended Complaint remains vague, conclusory and prolix.

The Municipal Defendants sought dismissal of Plaintiff's original Complaint on the ground that it did not contain "a short and plain statement of the claim showing that the pleader

---

[21] Outside of identifying them as defendants, the Amended Complaint makes no specific factual allegation against 10 Defendants, *viz.*, Judy Bond, Barbara Greene, Faith Ingulsrud, Kurt Johnson, Michael Oman, Mary Pacifici (deceased); Cynthia Seybolt, Rita St. Germain, Mike Weisel, or Barbara Yerrick.

With regard to Defendants Seth Friedman and Anton Kelsey, the Amended Complaint only lists the 2019 assessments of their properties, without alleging any specific factual conduct committed by them. *See* Am. Compl. at ¶ 84, Table 1 (Parcel ID numbers PV-139 and PV-200).

is entitled to relief" as required by Fed. R. Civ. Proc. 8(a)(2). *See* Doc. 5 at 3-10. In response, Plaintiff filed the Amended Complaint, rendering the prior Motion to Dismiss moot.

The Amended Complaint does provide additional detail regarding specific conduct by named defendants—indeed this additional detail, in many instances, clarified that Plaintiff's claims against those individuals are time-barred—however, the Amended Complaint still resembles the "shotgun" *Magluta* pleading discussed in the original Motion to Dismiss,

> replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the [34] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Id.*

Doc. 5 at 10 (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (10th Cir. 2001). The Amended Complaint is 97 pages, seven pages longer than the original Complaint, and still contains many paragraphs that make vague, conclusory allegations against unspecified defendants.[22]

This continuing vagueness has made it difficult for the Municipal Defendants to properly respond. The analysis in this Motion to Dismiss Amended Complaint reflects a significant amount of time and effort on counsel's part to parse Plaintiff's pleading, to determine what claims are being asserted, and to respond to those claims as best as can be done. However, in many areas of the Amended Complaint doubt still remains as to the basis of Plaintiff's claims, the factual allegations intended to support them, the specific individuals who are supposed to have caused Plaintiff harm, and even the claims themselves. *Semon v. Rock of Ages Corp.*, 2011 U.S. Dist. LEXIS 161594, *38-39, 2011 WL 13112212. Therefore, as a separate and independent ground for dismissal, the Municipal Defendants respectfully request that the paragraphs listed in

---

[22] See Doc. 46 at ¶¶ 1, 2, 3, 4, 49, 51, 52, 60, 61, 70, 71, 72, 75, 76, 77, 80, 81, 86, 87, 88, 89, 90, 91, 93, 94, 95, 96, 97, 99, 101, 105, 106, 109, 110, 113, 114, 115, 117, 120, 124, 125, 126, 127, 128, 129, 130, 131, 132, 141, 142, 143, 147, 148, 151, 153, 154, 157, 158, 159, 163, 165, 182, 184, 191, 205, 206, 207, 212, 222, 223, 225, 242, 243, 244, 247, 248, 250, 252, 253, 254, 255, 256, 258, 259, 262, 265.

Note 17 be dismissed on the grounds and for the reasons discussed in Section II of the original

Motion to Dismiss, which is hereby incorporated by reference. *See* Doc. 5, at 3-10 (making

argument); *also Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) ("This court has

repeatedly held that complaints containing only "conclusory," "vague," or "general allegations"

of a conspiracy to deprive a person of constitutional rights will be dismissed."); *Ali v. Town of*

*Putney*, 2007 U.S. Dist. LEXIS 56364, *4-5, 2007 WL 2220486 ("When the complaint fails to

comply with Rule 8, a court may dismiss the complaint or strike those portions that are

redundant or immaterial.").

## IV.    CONCLUSION

Wherefore, for the reasons above, the Municipal Defendants respectfully request this

Court dismiss all the claims asserted in the Amended Complaint.

Respectfully submitted, this 23rd day of August, 2021.

CARROLL, BOE, PELL & KITE, P.C.

BY:/s/: Kevin L. Kite_____
James F. Carroll, Esquire
Kevin L. Kite, Esquire
64 Court Street, Middlebury, VT  05753
(802) 388-6711
jcarroll@64court.com
kkite@64court.com

*Attorneys for Municipal Defendants*