# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

| | |
|---|---|
| DAVID P. DEMAREST, an individual, | CASE NO: 2:21-cv-167-wks |
| PLAINTIFF | (42 U.S.C. § 1983) |
| | (42 U.S.C. § 1983 Monell) |
| | Jury Trial Demanded |
| v. | |
| | |
| TOWN OF UNDERHILL, | |
| a municipality and charter town, | |
| SELECTBOARD CHAIR | |
| DANIEL STEINBAUER, as an | |
| individual and in official capacity, et. al. | |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

The motions to dismiss filed by Defendants Town of Underhill and named town officials fails to diminish any of the facts and legal merit of Plaintiff's causes of action presently before this Court. Plaintiff's responding opposition responds in the organizational sequence and numbering of Defendants' Memorandum.

## I. Standard Of Review

Defendants want this Court to extrapolate the differential administrative review of narrowly defined *Defendant-created* legal records for the purpose of establishing a *res judicata* defense *while fully ignoring the appropriate Standard of Review for all present claims is not differential in nature*. This Court has jurisdiction to apply an *appropriate standard of review* to the present case to determine both the veracity and legal merit of present claims before this Court.

1    Granting full faith to the inextricably intertwined factual determinations

2    made by County Road Commissioners in preceding state court proceedings is both

3    legally appropriate and adds emphasis to allegations in present Complaint.

4    Preceding state court judicial abdication, which was predicated entirely upon

5    the unconstitutional interpretation of Vermont law in *Ketchum v. Town of Dorset*,

6    does not limit this Court's jurisdiction on present causes of action. Most notably

7    and undeniably relevant to an analysis under Rooker-Feldman Doctrine, Plaintiff

8    was not a party to the *Ketchum* decision. This Court has both the jurisdiction and

9    responsibility to find a state law, or the law *as now precedentially applied due to a*

10   *prior state court legal interpretation of law*, as unconstitutional when the law *as*

11   *interpreted and applied* violates one or more Federal civil rights.[1] This Court also

12   has authority to find 19 V.S.A. § 701(2) *unconstitutionally vague* since the

13   definition of the "Altered" has left all potential major physical changes of a town

14   highway other than "a change in width from a single lane to two lanes" to the

15   absolute discretion of a defendant municipality even when a major change severely

16   harms a private property interest (such as conversions of a once functional

---

[1]Vermont law (19 V.S.A. §740) clearly provides the right of interested parties to the procedural due process of a *timely* Rule 74 appeal when a Town Highway is *altered*; the *Ketchum* decision at issue created a state precedent which disregarded the plain reading and historical understanding of the word *altered*. Town Highway *reclassifications* and *notices of insufficiency* in Vermont now only receive a differential Rule 75 administrative review of a record which is provided by the municipal defendant, instead of the due process incorporated in a Rule 74 appeal. The *Ketchum's* misinterpretation of the word *altered* is also relevant to potential compensation under 19 V.S.A. §808, which only provides a mechanism for compensation when laying out *or altering* a Town Highway.

town highway access into a recreational trail which denies landowners prior

access, or *extreme* dereliction of municipal maintenance duties such as refusals to

replace bridges and culverts). As the prior state court record involving Plaintiff

clearly documents, *which is not being appealed:* there was never any meaningful

judicial review of Defendants' *malicious* administrative decisions (or due to the

*Ketchum* precedent, the ability to uphold *any* of the *factual* determinations of the

*impartial* County Road Commissioners). In short, *Res judicata* and claim

preclusion do not apply to the present case because:

(1) The present causes of action have not been previously litigated,

(2) The *confirmed* taking of Plaintiff's *self-executing and exercised* property

access rights over the segment of TH26 converted into the Crane Brook Trail did

not occur until the Vermont Supreme Court decision dated February 26, 2021.[2]

(3) Plaintiff did not have standing to file a Federal Fifth Amendment Takings

Claims until *Knick v. Township of Scott* was wisely decided on June 21, 2019.

**Plaintiff's Response to II. (Factual Background)**

It is not necessary at this time for Plaintiff to contest each of Defendants' subtle

mischaracterizations of the factual history in their efforts to divert focus away from

the merit of present causes of action; the central uncontested historical fact is

---

[2] The Underhill Trails ordinance, *which has never been enforced*, still presently claims, "Permits *shall be* issued only to persons who, in the judgement of the Selectboard, have a legitimate need to operate a vehicle on the Crane Brook Trail. For the purposes of this ordinance, '*legitimate need' shall mean a compelling personal or business purpose*."

Plaintiff built his domicile in 2002 under a new dwelling permit issued to "NR-144" with the implicit and explicit promise of vehicular access on New Road and a reasonable expectation of privacy building a domicile in the middle of over 50 acres of *private* property. There is no *genuine* substantiation of claims Plaintiff's present access and privacy abutting a town highway is *equal but separate* to the prior access and reasonable expectations of privacy at Plaintiff's domicile. *Defendants have provided no compensation or genuine justification based upon necessity as statutorily defined* for the conversion of a central segment of TH-26 into a public trail destination instead of either preserving the segment as a functional town highway or discontinuing the segment.

The background of present claims is also relevant to document:

(1) Patterns and Practices of civil rights violations to establish *Monell* liability,

(2) The lack of impartiality among certain town officials and the persistent failures of certain town officials to recuse themselves when appropriate,

(3) The degree of collusion, intrinsic fraud, and extrinsic fraud which is alleged to have been perpetuated by Defendants both prior to and after the initiation of non-chronological appellate-style state court proceedings,

(4) Absolute and qualified immunity do not shield Defendants from the *willful* actions and inactions which, at an absolute minimum, were in *reckless disregard* for Plaintiff's constitutional rights, and

(5)  The longstanding pattern and practice of *ultra vires* efforts of individually

named Underhill town officials to both self-deal to themselves and *willfully*

harm Plaintiff due to his exercise of First Amendment protected speech (and

desire that his property rights be respected) provides justification for the

award of punitive damages against individually named Defendants.

As a matter of law, Promissory Estoppel precludes Defendants materially

benefiting from a breach of the past promises explicitly made to Plaintiff because

the promises were reasonably relied upon (as noted in ¶133 and ¶140 of

Complaint). Plaintiff has alleged a mere sampling of multiple instances of

censorship which for the purposes of consideration of a motion to dismiss as a

matter of law shall be construed as true; Plaintiff is willing and ready to

substantiate present First Amendment claims during discovery.

As will be elaborated upon under heading III (D) below, prior

non-chronological appellate-style review of Defendants' administrative decisions is

not binding on this Court, as stated in ¶50 of the Amended Complaint, Plaintiff

decisively won "on the merits" in preceding state court proceedings *when*

*permitted an appropriate standard of review of Defendants' actions and inactions.*

Prior to *Knick v. Township of Scott*, and even prior to the 2010 New Road

conversion of a portion of TH-26 from a Class III/Class IV Town Highway into a

Public Trail, Plaintiff has consistently engaged in dutifully attempting to

1   exhaust all potential state remedies in efforts to minimize harm caused by

2   relentless efforts to take Plaintiff's property rights without compensation.

3   **III(A) Defendants attempt to misapply Rooker-Feldman doctrine to injunctive**
4   **relief sought involving *Ketchum's* unconstitutional interpretation of Vermont**
5   **Law even though Plaintiff was not a party to the Ketchum decision**

6          Rooker-Feldman doctrine does not apply to Plaintiff's request for relief

7   involving *Ketchum v. Town of Dorset* decision since Plaintiff was not, *and could*

8   *not have been*, a party to that *precedential* Vermont Supreme Court decision. This

9   Court has jurisdiction and responsibility to strike down both unconstitutionally

10  vague laws and the unconstitutional interpretations of a laws.

11         As elaborated upon in ¶68-78 of Plaintiff's Amended Complaint, and the

12  present structural and procedural due process causes of action, interested parties

13  throughout Vermont seeking to appeal a municipality's town highway

14  *reclassification* (or *extreme* failures to maintain public infrastructure which may

15  adversely impact private property) are presently denied the procedural due process

16  protections of a Rule 74 appeal; a Rule 75 administrative review of a *defendant-*

17  *created* record amounts to no genuine procedural due process at all. Plaintiff's

18  standing to contest the constitutionality of a state law which is either

19  *unconstitutionally vague* or *unconstitutional due to prior state court precedent* is

20  entirely different than requesting this Court to conduct an appellate review of any

21  of the state court judgments which involve present parties.

1       In order to provide for 14th Amendment Procedural Due Process when a

2   property interest may be at stake, Vermont law has *and should continue to* provide

3   interested persons the right to a Rule 74 appeal of a municipal "*alteration"* to a

4   Town Highway, but the *Ketchum* interpretation of Vermont law now prevents the

5   plain reading of an "*alteration*" from encompassing a "*reclassification,*" or the

6   functional *alteration* of a Town Highway due to a municipality's sustained refusal

7   to provide *any* maintenance to public infrastructure. The Kafkaesque non-

8   chronological appellate-style review of administrative decisions involving Plaintiff

9   (and co-litigants) with the Town of Underhill serves to document how a

10  municipality's *sua sponte* conversion of a town highway into a recreational trail is

11  now able to circumvent both a residents' *first-filed* Notice of Insufficiency and take

12  significant portions of a landowner's bundle of private property rights without *any*

13  genuine procedural due process protection at all.

14      Rooker-Feldman doctrine *only* precludes a District Court's *appellant review*

15  of a case which received a state court's final judgment *on the merits.* None of the

16  preceding non-chronological appellate-style state court differential reviews of

17  Defendant's administrative decisions and Defendant-created record are binding on

18  this Court. Questions of law and fact surrounding the word *altered* are at issue, but

19  no portion of Plaintiff's Complaint "expressly invites the district court to review

20  and reject those judgments" to which Plaintiff was party to in prior proceedings.

1   The present causes of action, *and relief sought*, specifically seeks a redress

2   from Defendants' constitutional violations, as opposed to appealing any of prior

3   state court judgements involving Plaintiff which were reached *on the merits*

4   (reference Amended Complaint ¶50 on page 14, ¶60-67 on pages 18 and 19, and

5   injunctive relief B and C on page 87 and 88 *which seeks to uphold prior findings*

6   *on the merits separated from Defendant's intrinsic and extrinsic fraud upon the*

7   *courts*, while also needing to account for further degradation of the TH-26 corridor

8   which occurred over the years after County Road Commissioner findings of fact).

9   **III(B)(a) Fifth Amendment Takings Cause of Action**

10   Defendants largely attempt to claim facts not in the record and boldly make

11   assertions which are either mutually exclusive or easily contradicted by fact.

12   Defendants state on page 19, "Nothing has been taken from Plaintiff that was not

13   already taken from his predecessors in title" only to immediately concede in the

14   next paragraph "Plaintiff can no longer drive a vehicle over the Southern Access

15   Route." The very same paragraph which states Plaintiff can no longer drive a

16   vehicle over the "Southern Access Route" states "Plaintiff enjoys a common law

17   right of access to Crane Brook Trail as an abutting landowner." The last Vermont

18   Supreme Court decision clearly documents Plaintiff's *self-executing* common law

19   (and statutory) right of access over the segment of TH-26 which was converted

into the Crane Brook Trail has now been *taken* by Defendant Town of Underhill. Plaintiff adequately alleges this taking was *willfully malicious* and *self-dealing*.

Paragraph 122 of Plaintiff's Amended Complaint succinctly states how Vermont courts have deemed, as a matter of Vermont law, the conversion of town highways into recreational trails does not constitute a taking. This premise is not binding on this Court *and completely irreconcilable with relatable Federal case law*. Clearly established Federal case law, such as *Caquelin v. United States (2015)*, recognizes converting the use of a Railroad Right of Way (which unlike a town highway generally provides little *if any* utility or right to vehicular access to an abutting landowner) into use as a Recreational Trail constitutes a categorical taking. The genuine facts and legal record (such as the findings of the Country Road Commissioners) of prior state court proceedings are sufficient for any reasonable jury to find the conversion of TH-26 into a recreational destination and years of subsequent Defendant misconduct has resulted in a compensable taking.

Defendants claim the present case "differs from *In re Town Highway No. 20* in key respects" under the heading of III(B)(a) of their memorandum even though this element of present claims was brought under the Third and Fourth Causes of Action (see ¶109-122 of Amended Complaint) as opposed to the First and Second Causes of Action. Regardless, Defendants' argument completely ignores the allegation Defendants' actions, "were far more egregious than efforts in *Rhodes*

because Defendants intentionally caused Plaintiff's difficulty *continuing* to access his current *domicile* and infringed upon the reasonable expectations of privacy expected in and around one's home, as opposed to 'only' taking the economic value of Plaintiff's private property…" (¶119 of Amended Complaint). Table 1 of the Amended Complaint contains compelling factual basis to recognize "selectboard decisions being made for the express purpose of increasing the value of the neighbor's property while decreasing the value of the plaintiffs."

As clearly illustrated in Plaintiff's complaint,

It is now impossible to conceivably find any defendant acted in an arbitrary and capricious manner since a municipality's maintenance and reclassification decisions have an unlimited administrative "discretion" (¶116 of Plaintiff's Amended Complaint)

Plaintiff's Complaint makes clear reference to The Vermont Supreme Court decision dated February 26, 2021 which officially vanquished the possibility of reasonable investment-backed return from Plaintiff's proposed 9-lot subdivision[3] (to which the Town of Underhill denied even a *preliminary* access permit based *solely* upon the conversion of a segment of TH-26 into the Crane Brook Trail).

Nothing in the record known to Plaintiff substantiates the conclusory assertion, "It is clear that the Town has already justly compensated landowners for

---

[3] The loss of both reasonable expectations of privacy and reasonable access to Plaintiff's domicile *due to Defendant's willful actions and inactions,* combined with numerous nearby subdivisions and development, created an impetus to subdivide which was not reasonably foreseeable at the time of the 2010 New Road Reclassification.

the takings necessary to create TH 26." As a matter of historical fact, the present TH-26 corridor was re-routed from where it was first laid out *for the purpose of a mutually beneficial Town Highway which simultaneously established a public right to vehicular travel on the town highway* **and** *a private right of vehicular access to abutting private property by way of the town highway.* At the time of purchasing NR-144, Plaintiff had the reasonable expectation of owning "51.64 +/- acres," but the actual survey acreage of Plaintiff's parcel is 51.3 acres *due to the historical rerouting of TH-26*. Plaintiff is unaware of evidence to substantiate the claim compensation was provided to the predecessor in title of parcel NR-144 (as opposed to other parcels) for the change in acreage to NR-144 caused by the rerouting.[4]

Elements of the Procedural Due Process and Takings causes of action which have been sufficiently plead in both the Original and Amended Complaint before this Court include (1) the *conversion* of what was once a mutually beneficial town highway into a public recreational destination to benefit a few individuals at Plaintiff's expense without any genuine procedural due process, (2) Defendants' *willful* decision to take Plaintiff's previously promised and rightful vehicular access without just compensation, and (3) Defendants' efforts to advertise

---

[4] Plaintiff does not seek, and never has sought, compensation for the historical rerouting of TH-26 *as a public through-road which provided the concurrent self-executing private right of vehicular access to parcel NR-144.*

the entire "Crane Brook Area" as a public recreational destination without *any* mitigation or compensation for resultant impacts or the taking of Plaintiff's privacy in the middle of over 50 acres of *private* property.

**III(B)(b). Procedural Due Process Causes of Action**

Defendants' choice to quote Fuentes v. Shevin, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994 (1972) is apropos to the present claim: "an opportunity to be heard must be granted *at a meaningful time and in a meaningful manner."*

Defendants reference Plaintiff's *meaningless* "opportunity" to *eventually* present evidence to the County Road Commissioners but ignore the County Road Commissioners, *despite assuming certain false claims presented by Defendants' as true,* found "The Town cannot now insulate itself from its responsibilities to maintain the "trail" portion of Town Highway 26…" (Exhibit #6). Literally nothing in Plaintiff's Complaint goes against the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires that federal courts "give the same preclusive effect to a state-court *judgment* as another court of that State would give." *Exxon Mobil Corp. v. Saudi Basic Indus.* Corp., 544 U.S. 280, 293 (2005). A non-chronological administrative review of *Defendant-fabricated records* has absolutely no preclusive effect. Exhibits #1 - #6 contain a chronological sample of some of the most significant prior state court records referred to in ¶50 and ¶58 of Amended Complaint.

As the record demonstrates, the *Ketchum* precedential decision the word "*altered*" would no longer apply to reclassifications, or extreme dereliction of road maintenance responsibilities, results in no procedural due process protections at all; *municipal defendants throughout Vermont now have unlimited "discretion" to rescind a landowner's prior self-executing rights of vehicular access* by discontinuing a town highway *and* reclassifying the former town highway right of way into 49.5' wide public "trail" to block landowner reversionary property rights.

Plaintiff's Complaint also includes a plethora of material facts demonstrative of Defendant town officials having failed to recuse themselves from municipal decisions when conflicts of interest are readily apparent; no reasonable jury would believe the town officials involved in the *sua sponte* 2010 New Road reclassification were impartial (Amended Complaint ¶57 and ¶59).

The factual elements and preceding history of *Gauthier v. Kirkpatrick* referenced by Defendants, which arose after criminal proceedings and involved a plaintiff that *inter alia* attempted to sue municipal judges and did not even bother to respond to a motion to dismiss, has nothing in common with the present case. The issues of the present case are solely Defendants' actions and inactions (Amended Complaint ¶60), which were never permitted a *meaningful* time *or* manner to be heard due to Defendants' conduct and the *Ketchum* interpretation of the word *altered* which resulted in a non-chronological judicial administrative

1  review being limited to an "on the record" review of a *Defendant-fabricated* record

2  (Amended Complaint ¶76).

### III(B)(c). Substantive Due Process of Causes of Action

4      The 9th Amendment, *is actionable under very narrow factual situations*

5  against the States due to the 14th Amendment, recognizing, "The enumeration in

6  the Constitution, of certain rights, shall not be construed to *deny or disparage*

7  *others retained by the people*." The plain reading of the 9th Amendment and

8  relevant history necessitated a lack of specificity to preserve unenumerated rights.

9      Plaintiff has adequately alleged the Town of Underhill's advertisement of the

10  "Crane Brook Area" has been, and continues to be, the proximate cause of an

11  abnormally high number of random violations of Plaintiff's privacy at his domicile.

12      *Katz v. United States*, 389 U.S. 347 (1967) overturned *Olmstead v. United*

13  *States*, 277 U.S. 438 (1928) and adds emphasis to Mr. Justice Brandeis' dissenting

14  opinion from the *Olmstead v. United States* decision which involved the principles

15  underlying the Constitution's guarantees of the right to privacy:

16      The makers of our Constitution undertook to secure conditions favorable to
17      the pursuit of happiness. They recognized the significance of man's spiritual
18      nature of his feelings and of his intellect. They knew that only a part of the
19      pain, pleasure and satisfactions of life are to be found in material things.
20      They sought to protect Americans in their beliefs, their thoughts, their
21      emotions and their sensations. They conferred, as against the Government,
22      the right to be let alone -- the most comprehensive of rights and the right
23      most valued by civilized men. (as quoted in *Griswold v. Connecticut* 381
24      U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510)

1     Plaintiff has provided factual support for the direct and sole causes of Plaintiff's

2     loss of privacy at his domicile in the middle of over 50 acres of *private* property is

3     the Town of Underhill's conversion of a segment of TH-26 into the "Crane Brook

4     Trail," and persistent advertisement of the "Crane Brook Area" as a recreational

5     destination while *willfully* refusing to either manage public use or make *any*

6     genuine attempt to discourage the public from exploring nearby private property.

7        In addition, Article IV Section 2 Clause 1 (Privileges and Immunities

8     Clause) unequivocally confers the right of an out-of-state resident to "be entitled to

9     all Privileges and Immunities of Citizens" as granted a resident of the state they are

10    visiting. As a matter of logic and law, the non-specificity of the 9th Amendment

11    ensures the 'Privileges and Immunities' guaranteed[5] to an "out-of-state" resident as

12    equally actionable for an "in-state" resident.

13       Unlike Federal eminent domain authority, Vermont's Constitution has more

14    limitations on local municipal eminent domain powers (see ¶114 of Plaintiff's

15    Amended Complaint); lack of eminent domain authority to take private property

16    for public recreation and the precedent set in *Preseault v. United States* (U.S. Ct. of

17    Appeals, Federal Circuit 1996) was certainly known by Defendants given decades

18    of *extensive* legal advice. The long history of Defendants' conduct is

---

[5] Either by judicial precedent (as in the case of the right to privacy), *or when explicitly both guaranteed and actionable in a relevant State Constitution* (as in case of the rights outlined in ¶112-¶122 of Plaintiff's Amended Complaint)

1   *prima facie* evidence Defendants sued in an individual capacity had *malicious*

2   intentions to take property rights from others for recreation and personal gain.

3   **III(B)(d). First Amendment Causes of Action (censorship and manipulation of**

4   **public records, and retaliation for Plaintiff's protected speech)**

5       Defendants misconstrue the narrow applicability of the Court findings in

6   *Tylicki v. Schwartz* which explicitly states, "His allegation…that Schwartz began

7   investigating him only after he publicly criticized the State University of New York

8   at Binghamton is not properly before this Court as it was not raised in the district

9   court." *See Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 103 (2d Cir. 2004)

10  ("In general we refrain from passing on issues not raised below.").

11      *Steuerwald v. Cleveland*, 2015 U.S. Dist. LEXIS 44246, *18 (D. Vt. 2015) is

12  likewise inapplicable and extremely narrow in scope since, "The inaccuracy of

13  records compiled or maintained by the government is not, *standing alone,*

14  sufficient to state a claim of constitutional injury under the due process clause of

15  the Fourteenth Amendment." The *willful* and *repetitive* "inaccuracy" of public

16  records demonstrates Defendants' *mens rea.* As opposed to theoretical harm,

17  prayers for relief K, O and P articulate harm suffered, the proximate cause of

18  which was the *willful* and *repetitive* censorship and manipulation of public records.

19      Plaintiff has alleged a plethora of the facts which constitutes First

20  Amendment retaliation claim according to Revels v. Vincenz (382 F.3d 870):

1  (1) he engaged in a protected activity, (2) the government official[s] took
2  adverse action against him that would chill a person of ordinary firmness
3  from continuing in the activity, and (3) the adverse action was motivated
4  at least in part by the exercise of the protected activity.

5  **III(B)(e). First Amendment Causes of Action (violation of right to petition).**

6  The duly submitted petitions Plaintiff submitted with the support of over 5%

7  of the Town of Underhill's voters were quite literally circumvented by Defendants

8  named under the Eleventh Cause of Action despite many of the officials having

9  obtained their position either unopposed or as a write-in; Defendants' refusal to

10  allow the 2020 Petition on Public Accountability to be voted on, despite the

11  support of over 200 Underhill Voters, is starkly contrasted by an eagerness to self-

12  deal or appease a handful of residents *depending upon who they are* (even to the

13  extent of spending public funds for legal advice on how to go against a State of

14  Vermont speed study *simply because the right person asked*)[6].

15  As alleged, Defendants' have a pattern and practice of refusing to abide by

16  multiple duly submitted petitions; *willfully* obstructing petitions supported by over

17  5%-15% of Underhill's voters stands in stark contrast to Defendants' eagerness to

18  entertain requests made by the right person or clique of people, even if doing so

19  increases town legal expenses for trivial matters (such as footnote 6 below).

---

[6] December 15, 2020 Selectboard meeting minutes, "Dan said two issues were discussed during the executive session. The first was the speed study. We are going to contact the CCRPC, the originators of the study, and develop a plan in order to justify a lower speed limit than what the speed study indicates and get their support for doing that… Bob said the second discussion was about the petition presented by David Demarest. The board is going to take that matter under consideration, and draft a response and will take the item up again..."

1    Plaintiff separated the right to petition clause of the first amendment from

2    the censorship/manipulation of public records and retaliation cause of action

3    because as a separate cause of action there should not be any contested facts.

4    Which leaves only three questions to be decided under the 11th and 12th causes of

5    action: (1) Does the First Amendment support voters *right to petition?* (2) If so,

6    can voters compel a municipality to add articles to a ballot if supported by

7    sufficient voter support under state law? (In Vermont, 5% of a municipality's

8    registered voters is sufficient for both legal and practical reasons). (3) Does the

9    Right to Petition preclude a municipal official with a clear conflict of interest from

10   involvement in the municipality's response to said duly submitted petition?

11   **III(B)(f). Claims of collusion and conspiracy.**

12   Plaintiff has not attempted to advance any claims under 42 U.S.C. § 1985(3)

13   under the assumption that such claims require the element of having been

14   motivated by being a member of a racial or other already named protected class.

15   The invidious discriminatory animus exhibited by individually named town

16   officials, many of which are or were also Jericho Underhill Land Trust ("JULT")

17   affiliates, against Plaintiff as a *landowner* that simply wanted his property rights to

18   be respected (such as allegations stated in ¶126 of Plaintiff's Amended complaint)

19   may justify the addition of causes of action under 42 U.S.C. § 1985(3) after

20   discovery.

1    Claims of collusion and conspiracy by individually named town officials

2  (and members of the Jericho Underhill Land Trust) to violate Plaintiff's civil rights

3  are directly relevant to present 42 U.S.C. § 1983 action by demonstrating the merit

4  of the prayers for relief presently sought while also further substantiating causes of

5  action either caused or exacerbated by a *willful* lack of *impartiality* among

6  colluding town officials in efforts to violate Plaintiff's civil rights. Both absolute

7  and qualified immunity defenses, although not presently raised by Defendants, do

8  not shield Defendants from the merit of any present causes of action.

9    Equally notable in 42 U.S.C. § 1983 claims, while the Court may award

10  punitive damages for defendant conduct that is merely reckless or callous, awards

11  rightly seek to "punish the defendant for his willful or malicious conduct and to

12  deter others from similar behavior." (Memphis Community School Dist. v.

13  Stachura, 29 477 U.S. 299, 306 n.9 (1986)). The merit of facts alleged, such as ¶51

14  of Plaintiff's Amended Complaint, *and the degree and duration of collusion among*

15  *individually named Defendants* are directly relevant to determination of "the

16  degree of reprehensibility of the Defendants' conduct."

17  ***III(C) Defendants again attempt to avoid accountability by misapplication of***

18  ***applicable statutes of limitations.***

19    In addition to legal considerations of *equitable tolling, equitable estoppel,*

20  and *promissory estoppel*, a few of the most notable recent factual allegations which

1    demonstrate the statute of limitations does not apply to present claims and the

2    taking of Plaintiff's private right of access over the Crane Brook Trail:

3        1) November 13, 2019 was the *first instance* the Town of Underhill refused

4           to move the boulders which were sporadically placed in the way of

5           Plaintiff's southerly access route on the current and former TH-26

6           corridor (reference ¶153 and ¶154 of Amended Complaint)

7        2) Plaintiff has made use of the entire TH-26 corridor with personal motor

8           vehicles openly since 2002, albeit with increasingly *extreme difficulty* due

9           to Defendant Town of Underhill's refusal to provide *any* maintenance to

10          the Crane Brook Trail, *or* even permitting Plaintiff to maintain the Crane

11          Brook Trail portion of TH-26 for access at his own expense.

12       3) It was not until February 26, 2021, *despite well-reasoned dissenting*

13          *opinion*, that the Vermont Supreme Court granted the Town of Underhill

14          discretion to *rescind* Plaintiff's *self-executing and exercised* prior right of

15          access over the "Crane Brook Trail."

16       For the purposes of present causes of action involving the taking of Plaintiff's

17   property, present causes of action were timely filed. It is largely immaterial if the

18   accrual date is deemed to be **February 26, 2021** (the date of the official rescinding

19   of Plaintiff's private right of access on the portion of TH-26 converted into the

20   Crane Brook Trail, and the confirmed taking of the vast majority of Plaintiff's

reasonable investment backed returns), or **June 21, 2019** (the date of the wise decision by the United States Supreme Court in *Knick v. Township of Scott* which conferred standing to bring present Takings claims in this Court, instead of Plaintiff exhausting all Sisyphean pursuits of "potential" state remedies which already consumed ~12 years of Plaintiff's *diligent efforts* in lower courts. Defendants also failed to account for the tolling due to COVID's State of Emergency.

Dixon v. United States, (1999 U.S. App. LEXIS 13215 (10th Cir. Okla. 1999)) provides solid rationale for equitable tolling of Plaintiff's present causes of action.

### III (D) Claim Preclusion

The past Vermont court decisions based upon an appropriate standard of judicial review for issues presently raised and genuine facts (as opposed to the portions of the prior state litigation legal record riddled with intrinsic and extrinsic fraud) are:

A. The un-appealed Vermont court decision May 31, 2011 (Docket No S0234-10, which found Defendants' claim that a 2001 New Road Reclassification had occurred was in fact entirely invalid),

B. The findings of Chittenden County Road Commissioners for Docket No 234-10 CnC (Dated June 26, 2013, "Repairs are to consist of those repairs recommended by petitioner, consulting engineer, John P. Pitrowski, P.E., as set forth in a letter to petitioners' counsel dated November 21, 2012...").

C. Despite the Road Commissioners finding entirely in favor of Plaintiff, they still did not take into account all relevant historical facts, such as a prior Town of Underhill Road Foreman's factual knowledge and the malicious intentions of a clique of Town Officials which is self-evident from over 20 years of public meeting minutes, which were never allowed into the record.
[Exhibit #1 of Filing #45 is an example of relevant history kept from incorporation into the prior state court legal record]

1        The doctrine of Claim preclusion requires a final decision *"on the merits."*

2  The *prior non-chronological appellate-style reviews of Defendants' administrative*

3  *decisions are not decisions on the merits* for the purposes of any of the *civil rights*

4  causes of action currently before this Court so claim preclusion does not apply to

5  any of the present causes of action or requests for relief.

6        In addition, as a matter of law an unasserted permissive counterclaim does

7  not provide the requisite element for claim preclusion. Prior to the February 26,

8  2021 Vermont supreme court decision (*Vermont Supreme Court Docket No 2020-*

9  *098)* there was no legal ambiguity that a landowner abutting a town highway held a

10  private right of vehicular access to their property by way of a current or former

11  Town Highway in accordance with common law, Vermont *19 V.S.A. §717(c)*, and

12  in present case the fact Plaintiff has continued to exercise this *self-executing* right

13  to access his domicile by way of New Road despite extreme difficulty the

14  proximate cause of which was created by the *willfully* deteriorated condition of the

15  former roadbed and the unpredictability of whether or not there will be boulders or

16  vehicles in the way. Plaintiff has standing to seek injunctive relief to end the

17  present unconstitutional interpretation of Vermont law due to *Ketchum v. Town of*

18  *Dorset* precedent; relief sought in the Amended Complaint is in accordance with

19  *28 U.S.C. § 1738* since it simply seeks this Court to extend full faith to prior

20  *genuine* findings of fact (specifically B and C of Amended Complaint).

1   As alleged in Plaintiff's complaint, due to the *Ketchum v. Town of Dorset*

2   decision to which Plaintiff was not a party, the subsequent interpretation of

3   Vermont law prevents any genuine determination "on the merits" of cases

4   involving a municipal conversion of a town highway into a public trail which

5   denies landowners' prior vehicular use. Extreme levels of arbitrary and capricious

6   municipal road maintenance decisions which result in an alteration of the usability

7   of a town highway are likewise *entirely discretionary*. As emphasized in ¶76 of

8   Plaintiff's Amended Complaint, *Ketchum's* precedent causes interested parties to

9   receive "no fact-finding. It is an appellate-style review of an administrative

10  decision." (Referenced court document is attached as Exhibit 5).

11  The change from the right of a Rule 74 appeal to only a cursory Rule 75

12  appeal allows municipal defendants to serve as their own adjudicator when

13  interested parties either appeal a conversion of a town highway into a public trail,

14  or three landowners file a Notice of Insufficiency involving *extreme* failures to

15  provide reasonable and necessary maintenance to a town highway.

16  ### III (E) and (F)

17  Plaintiff humbly requests this Court's understanding as to the length of the

18  complaint given to the duration of factual history of claims raised, the number of

19  town officials directly involved, and the degree of collusion alleged to have

20  occurred among town officials (and Jericho Underhill Land Trust affiliates).

1        Reference to records of public meetings (Amended Complaint ¶51-52, ¶97,

2    ¶164, ¶179, ¶186-187, ¶191-193, ¶204, ¶207 ¶243-245, and ¶271) should not be

3    misconstrued as vague or conclusory; it is axiomatic Defendants have greater

4    access to their own public records than Plaintiff. Plaintiff should not be faulted for

5    allegations any reasonable jury would make when presented with all relevant

6    evidence. Plaintiff has certified under Rule 11, "the factual contentions have

7    evidentiary support or, if specifically so identified, will likely have evidentiary

8    support after a reasonable opportunity for further investigation or discovery."

9    Dismissal of claims against the twelve Defendants referenced under III(E) would

10   be premature and inappropriate based on the context of present causes of action

11   and ¶45 of the Amended Complaint. Plaintiff believes discovery to be the time to

12   fully substantiate causes of action against each Defendant; at a minimum, Plaintiff

13   should be granted leave to amend additional allegations involving each Defendant

14   presently named. Exhibits #8 - #9 are a *partial example* of records supporting

15   elements of claims against Defendants Seth Friedman and Anton Kelsey.

16   **In Summary**

17       Plaintiff's complaint pleads discrete claims in separate counts which have

18   merit. The taking of Plaintiff's property without compensation is distinct from the

19   Procedural Due Process violation which occurred when Defendant Town of

20   Underhill, and other Defendants involved in the 2010 New Road Reclassification,

crafted a record in support of a *predetermined* result in *willful* indifference to Plaintiff's procedural due process rights. Defendants also violated Plaintiff's Ninth and Fourteenth Amendment substantive due process rights to privacy and protection of explicit state constitutional rights.

Defendants' regular use of legal advice conferred undeniable knowledge of *Presault v. United States, 100 F.3d 1525 (Fed. Cir. 1996)* and that recreation (and self-dealing) are impermissible justifications for municipal takings in Vermont.

Retaliation for Plaintiff's protected speech, willful censorship and misrepresentation of the public record, and violation of the right to petition have merit on their own and emphasize a *malicious disregard* for constitutional rights.

The argument of *equal but separate* access and privacy after the conversion of a central segment of TH-26 into an unmaintained public recreational destination *which rescinds self-executing landowner access rights* is fundamentally flawed. None of Defendants' arguments and "shotgun approach" of potential legal technicalities diminish the merit of present causes of action.

For the above stated reasons, the Motion to Dismiss filed should be denied. Respectfully submitted this 17th day of September 2021.

By: /s/: David Demarest
David P Demarest, *Pro Se*
P.O. Box 144
Underhill, VT 05489
(802) 363-9962
david@vermontmushrooms.com