UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | |
|---|---|
| DAVID P. DEMAREST, an individual, )<br>PLAINTIFF )<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　v.　　　　　　　　　　　) CASE NO. 2:21-cv-00167-wks<br>　　　　　　　　　　　　　　　　　)<br>TOWN OF UNDERHILL, a municipality )<br>and charter town, SELECTBOARD CHAIR )<br>DANIEL STEINABAUER, as an )<br>individual and in official capacity, et al. ) | |

**THE TOWN OF UNDERHILL'S REPLY TO**
**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

The Municipal Defendants,[1] by and through their attorneys, Carroll, Boe, Pell & Kite, P.C., reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss, Doc. 55 ("Opposition"), as follows:

**I.　　Standard of Review & Factual Background**

Plaintiff does not contradict that the Court may consider the records of the four prior state court actions when considering dismissal without converting the motion to dismiss to a motion for summary judgment. Moreover, Plaintiff has attached several state-court documents to his own Opposition. *See* Docs. 55-4 through 55-7. Accordingly, no dispute exists regarding the standard of review or the Court's consideration of the underlying state court documents.

Although Plaintiff insinuates that the Factual Background provided in the Motion to Dismiss includes "subtle mischaracterizations of the factual history," Doc. 55 at 3, Plaintiff

---

[1] The "Municipal Defendants" are, collectively, the Town of Underhill (the "Town"), Daniel Steinbauer, Bob Stone, Peter Duval, Dick Albertini, Judy Bond, Peter Brooks, Seth Friedman, Marcy Gibson, Barbara Greene, Carolyn Gregson, Stan Hamlet, Rick Heh, Brad Holden, Faith Ingulsrud, Kurt Johnson, Anton Kelsey, Karen McKnight, Nancy McRae, Michael Oman, Steve Owens, Mary Pacifici, Clifford Peterson, Patricia Sabalis, Cynthia Seybolt, Trevor Squirrell, Rita St. Germain, Daphne Tanis, Walter "Ted" Tedford, Steve Walkerman, Mike Weisel, and Barbara Yerrick.

1

apparently agrees that this case centers on the Plaintiff's "central" allegation that the Town has wrongfully denied him vehicular access along what is now Crane Brook Trail, beginning in 2002. *E.g.,* Doc. 55 at 3-4.

### III(A).  The *Rooker-Feldman* doctrine applies to Plaintiff's claims

Plaintiff, citing no case law, seeks to avoid application of the *Rooker-Feldman* doctrine by arguing that "Plaintiff was not, *and could not have been*, a party to [*Ketchum*]," Doc. 55 at 6 (emphasis in original). The Town does not contend that Plaintiff was a *Ketchum* party or seek to apply *Rooker-Feldman* to the *Ketchum* decision. *Rooker-Feldman* applies because Plaintiff and the Town were adverse parties in four separate state court actions, all of which Plaintiff ultimately "lost," and Plaintiff, complaining of injuries caused by these state court judgments, seeks to undo them here in Federal District Court. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005).

Plaintiff contends he is not seeking to review and reject those decisions. Doc. 55 at 7. This position is untenable. The Amended Complaint asks this Court to accept the portions of state litigation in which Plaintiff was momentarily victorious and reject those portions in which he lost. Doc. 46 at ¶ 50; Doc 46 at ¶ 60; *also* Doc. 55 at 21.

Plaintiff's specific requests for relief in connection with his procedural due process claim clearly ask this Court to review and reject those prior state court judgments. Plaintiff asks this Court to overrule *Ketchum* and decree that *all* road maintenance and reclassification decisions in Vermont must be conducted under Rule 74, rather than Rule 75, Doc. 46 at 88, ¶ A, a decision that would directly overrule the 2010 Reclassification Appeal decision, *Demarest v. Town of Underhill*, 2013 VT 72, ¶12-¶14, 195 Vt. 204, 210-211. Plaintiff also asks for injunctive relief regarding Irish Settlement Road "generally based on the Vermont Superior Court decision in the

2

prior maintenance appeal but updated," Doc. 44 at p. 87, ¶ B, a request that would overturn the 2012 Maintenance Appeal decision, *Demarest v. Town of Underhill*, 2016 VT 10, ¶16, 201 Vt. 185, 192, which acknowledged the Town has wide discretion in its decisions regarding maintenance of Class 4 roads. Further, Plaintiff asks this Court to "remand[] a *new* Notice of Insufficiency appeal in Vermont courts" for Crane Brook Trail and require that the new appeal be conducted under Rule 74 "based *purely*" on the 2010 policies and highway classifications, Doc. 44 at p. 88, ¶ C (emphases in original), relief that would both grant Plaintiff a re-do of the Notice of Sufficiency in the 2010 Reclassification Appeal *and* reverse the Vermont Supreme Court's appeal decision, *In re Town Highway 26*, 2015 Vt. Unpub. LEXIS 87, *9, 199 Vt. 648, 114 A.3d 505, 2015 WL 23836772012. Finally, Plaintiff asks the Court to "remand" the 2010 Reclassification and 2012 Maintenance Appeals and direct Town officials to recuse themselves "*or be recused against their will*" during the new Notice of Insufficiency appeals. *Id.* at ¶ D. Taken together, these requests asks this Court to take up the four state court judgments, rewrite them to make Plaintiff the winner, and then "remand" the entire controversy to Vermont courts to be re-heard in compliance with this Court's rulings. *Rooker-Feldman* is intended to prevent actions just like this. *See Hoblock*, 422 F.3d at 87. To the extent Plaintiff's Complaint seeks review and rejection of the four state court judgments, this Court lacks subject matter jurisdiction and Plaintiff's federal avenue of appeal lies with the United State Supreme Court. *Hoblock,* 422 F.3d at 83-84.

**III(B)(a).    The "Rails-to-Trails" Cases are inapposite**

Plaintiff's reliance on the "Rails to Trails" cases, Doc. 55 at 9 and 15, is misplaced. "Rails to Trails" cases involve challenges to the 1983 "Rails-to-Trails Act" (the "Act"). *See, e.g., Preseault v. United States*, 100 F.3d 1525, 1529 n.3, (Fed. Cir. 1996) (describing "Rails-to-

Trails" Act). Vastly oversimplified, these cases hold that a taking occurs when a government-controlled change in use from railroad to recreational trail exceeds the scope of the easement originally acquired by the railroad as determined by state law. *E.g., Preseault,* 100 F.3d at 1533, 1541-1544; *Caquelin v. United States*, 959 F.3d 1360, 1367 (Fed. Cir. 2020); *see also Caquelin,* 959 F.3d at 1363-1364 (describing Act in greater detail).

This case involves neither the Rails-to-Trails Act nor an easement. Any interest the Town has in TH 26 was acquired by condemnation to public use, not by grant of easement. Once condemned, the Town's control over the public highway is notably different from a limited railroad easement. Vermont law expressly grants the Town control over features in public rights of way, including the power to set off portions of public highways for pedestrian and bicycle use, *see* 24 V.S.A. § 2291(1), or even to shut off vehicular access to a road entirely, *Baird v. City of Burlington*, 2016 VT 6, P4, 201 Vt. 112, 115, 136 A.3d 223, 226, 2016 Vt. LEXIS 5, *3. Importantly, Vermont law expressly gives Towns the authority to reclassify roads and create legal trails that may be used for recreational purposes. 19 V.S.A. § 775. Only when the Town completely relinquishes the public right of way does title revert to the adjoining landowners. *Id.* The "Rails-to-Trails" cases do not apply to this case and do not demonstrate that the Town has exceeded the scope of its use acquired through the original condemnation of TH 26.

The Town's acknowledgement that the reclassification of a portion TH 26 to a trail limited the public's use of the right of way by preventing vehicular access is not a concession. Doc. 55 at 8. Since TH 26 was established as a public highway, the Town has had the authority to change and limit the public's use of the right of way in accordance with statutory authority. The Town's decision to reclassify the highway as a legal trail and restrict vehicular access across the trail was based on such statutory authority, and no new condemnation was required for the

Town to effect this change. Plaintiff has cited no legal authority to indicate otherwise. Plaintiff has not suffered a "taking" in the constitutional sense.

### III(B)(b). *Gauthier* demonstrates a Rule 75 appeal is "meaningful"

The Town has demonstrated that, under the law, Plaintiff had a meaningful opportunity to be heard that would satisfy constitutional concerns. Doc. 52 at 22-23. Plaintiff's unfounded contention that his opportunity to be heard was "meaningless" is unsupported by fact or by law.

*Gauthier* is on point. In *Gauthier*, a state official failed to remove the plaintiff's name from the Vermont Sex Offender Registry. The Court concluded that the ability to make an online request to investigate the discrepancy and the ability to have that decision reviewed under V.R.C.P. 75 was "meaningful, and Plaintiffs have therefore failed to state a claim against Goode for any due-process violation." *Gauthier v. Kirkpatrick*, 2013 U.S. Dist. LEXIS 172578, *62, 2013 WL 6407716. Here, Plaintiff appealed the Town's decisions to Vermont Superior Court and then on to the Vermont Supreme Court, not once, but *four separate times*. That the Court rejected Plaintiff's arguments does not make his opportunity to be heard "meaningless," Doc. 55 at 12. Plaintiff has not alleged facts sufficient to demonstrate a procedural due process claim.

### III(B)(c). Plaintiff fails to state a Substantive Due Process claim

*Katz v. United States*, 389 U.S. 347 (1967) and Justice Brandeis' dissenting opinion in *Olmstead v. United States*, 277 U.S. 438 (1928) do not help Plaintiff establish a substantive due process claim because *Katz* and *Olmstead* involve the Fourth Amendment right to be free of unreasonable search and seizure and the Fifth Amendment right to be free from compelled self-incrimination. *Katz v. United States*, 389 U.S. 347, 348-349, 349 n.3 (1967); *Olmstead v. United States*, 277 U.S. 438, 455, 48 S. Ct. 564, 565 (1928). These cases cannot counter the argument presented in the Town's Motion to Dismiss that Plaintiff has failed to state a substantive due

process claim. *See* Doc 52 at 23-24. Similarly, Plaintiff's appeal to the plain language of the Ninth Amendment does not change the Second Circuit's conclusion that the Ninth Amendment is "a rule of construction that does not give rise to individual rights." *Zorn v. Premiere Homes, Inc.*, 109 Fed. Appx. 475, 475 (2d Cir. 2004).

### III(B)(d). *Tylicki* and *Steuerwald* apply to this case

Plaintiff misreads the appellate case *Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010). *See* Doc. 55 at 16 (making argument). The *Tylicki* district court dismissed the plaintiff's complaint on a number of grounds, including the ground for which the Town cited *Tylicki* in the motion to dismiss. Doc. 52 at 25. The Second Circuit affirmed on appeal, concluding, "Tylicki's contention that Schwartz violated his right to privacy by creating police records containing false information, and distributing this false information, fails to allege a violation of a constitutional right." *Tylicki*, 401 Fed. Appx. at 603. The language Plaintiff cites is a separate issue. *Tylicki*, 401 Fed. Appx. At 604.

The Town cited *Steuerwald v Cleveland,* 2015 U.S. Dist. LEXIS 44246, *18 (D. Vt. 2015) to demonstrate that efforts to state constitutional violations based on inaccurate records have failed. Doc. 52 at 25. Plaintiff has not cited any cases demonstrating such claims succeed.

### III(B)(e). Plaintiff does not state petition or conspiracy claims

As the Town's Motion to Dismiss demonstrates, although Plaintiff has a protected right to petition government officials, there is no constitutional requirement for those government officials to "listen or respond." *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984). Plaintiff petitioned the Town, and the Town declined to "listen or respond" as Plaintiff would have liked. Plaintiff has not demonstrated that this violated the U.S. Constitution or even Vermont law. *See* Doc. 44 at 26-28.

Moreover, Plaintiff apparently concedes and confirms that he is *not* asserting a conspiracy or collusion claim. Doc. 55 at 18. Plaintiff's efforts to cast those allegations as relevant to a prospective damages award is speculative and unfounded in law. Plaintiff's response clarifies he has not stated a conspiracy or collusion claim in his Amended Complaint.

### III(C).        Plaintiff's proposed accrual dates are not valid under the law

Plaintiff does not counter the Municipal Defendants' extended discussion in the Motion to Dismiss of how applicable statutes of limitations bar Plaintiff's assorted claims. *See* Doc. 52 at 29-37. Plaintiff asserts that *Dixon v. United States*, 1999 U.S. App. LEXIS 13215 (10th Cir. 1999) "provides solid rationale for equitable tolling in Plaintiff's present cause of action." Doc. 55 at 21. However, *Dixon* provides no analysis or explanation of how or when equitable tolling would apply; in any event, *Dixon declined* to apply equitable tolling and affirmed dismissal of the complaint based on statute of limitations grounds. *Dixon v. United States*, 1999 U.S. App. LEXIS 13215, *3-4 (10th Cir. 1999). Plaintiff cites no authority other than *Dixon* explaining how or why these tolling doctrines should apply to his claims.

Plaintiff contends November 13, 2019 should be the accrual date of his claims. Doc. 55 at 20; *see also* Doc 46 at ¶ 153. This date cannot be the accrual date interference with Plaintiff's use of the Southern Access Route because the "promise" Plaintiff references was made in 2005, Doc. 46 at ¶ 152, and Plaintiff simultaneously alleges the Town interfered with Plaintiff's access along the Southern Access Route repeatedly since 2005. Doc. 44 at ¶ 47 and ¶ 57; ¶ 71. Assuming all these allegations to be true, Plaintiff cannot contend that November 13, 2019 somehow marked the date upon which the Town first broke its 2005 promise to Plaintiff or first interfered with Plaintiff's vehicular access along Crane Brook Trail.

Plaintiff argues that June 21, 2019, the date the U.S. Supreme Court decided *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), should be the "accrual date" because "Plaintiff did not have standing to file a Federal Fifth Amendment Takings Claims [sic]" until then. Doc. 55 at 3 and 21. Although *Knick* and *Pakdel v. City & Cty. of San Francisco*, 141 S. Ct. 2226, 2231 (2021) removed the previous "ripeness" and "exhaustion" requirements, these cases do not provide Plaintiff with a basis for asserting June 21, 2019 as the accrual date because

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). Indeed, one court has already recognized that *Knick* must be applied retroactively, "even if it makes a previously timely action untimely." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 819 (Ky. E.D. 2019) (citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995)).

Plaintiff also suggests February 26, 2021 (the date of the 2016 Subdivision Appeal, *Demarest v. Town of Underhill*, 2021 VT 14, P3, 2021 Vt. LEXIS 20, *2, 256 A.3d 554, 2021 WL 747756) should be the accrual date. Doc 55 at 3 and 20. However, Plaintiff provides no rebuttal to the Municipal Defendant's demonstration that this date cannot serve as the accrual date of Plaintiff's claims. *See* Doc. 52 at 34-36. Moreover, *Pakdel* makes clear that the Vermont Supreme Court's February 26, 2021 decision is *not* the accrual date for Plaintiff's claims. *Pakdel* expressly rejects the exhaustion of remedies requirement and explains "The finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'"" *Pakdel*, 141 S. Ct. at 2230 (citation omitted). "Once the government is committed to a position . . . the dispute is ripe for judicial resolution." *Id.*

In any event, Plaintiff missed his opportunity to bring his takings claim even under pre-*Knick* rules. Plaintiff alleges that the Town violated his Fifth Amendment rights by taking his right to vehicular access along Crane Brook Trail. The alleged taking, if it occurred, occurred as early as 2002, when the Town first attempted to reclassify a portion of TH 26 and reduced maintenance of the segment, and no later than 2010, when the Town successfully reclassified a portion of TH 26 as Crane Brook Trail. That was the year the Town "committed to a position" with respect to vehicular access. *Pakdel*, 141 S. Ct. at 2230. Plaintiff appealed the Town's 2010 reclassification all the way to the Vermont Supreme Court, whose final decision was issued on September 13, 2013. *Demarest v. Town of Underhill*, 2013 VT 72, 195 Vt. 204. If reclassification to a trail constituted a taking, then the claim was ripe and Plaintiff had exhausted his administrative remedies by no later than September 13, 2013. The Amended Complaint was filed more than six years later and is time-barred.

### III(D).     Reply to Plaintiff's Response Regarding Claim Preclusion

With regard to claim preclusion, Plaintiff argues that the prior cases are not "decisions on the merits" for purposes of any "civil rights" claims. Doc. 55. In addition, Plaintiff argues that claim preclusion does not bar an "unasserted permissive counterclaim." *Id.* This is no answer to the case law cited in the Motion to Dismiss Amended Complaint. *See* Doc. 52 at 37-38.

Under Vermont law, claim preclusion applies both to claims that were brought and claims that could have been brought in prior litigation. *Steuerwald v. Cleveland*, 651 Fed. Appx. 49, 50 (2d Cir. 2016); *Demarest v. Town of Underhill*, 2021 VT 14, ¶20.

The factual allegations in the Amended Complaint mirror the factual allegations actually considered and litigated in state court, including, for example, challenges to the *Ketchum* decision, *Demarest*, 2013 VT 72, ¶13-¶14, 195 Vt. 204, 210-211, arguments that the road

reclassification decision should have been treated as "a de novo proceeding requiring the appointment of commissioners," instead of "as a Rule 75 appeal, *id*., 2013 VT 72, ¶11, 195 Vt. 204, 209, challenges to the sequencing of the appeals and the stays, *id*., 2013 VT 72, ¶15-¶19, 195 Vt. 204, 211-213, concerns about inadequate evidence for the reclassification decision, *id.*, 2013 VT 72, ¶20, 195 Vt. 204, 213, allegations that "some elected officials had been motivated to reclassify the segment in an attempt to increase personal property values," *id.*, 2013 VT 72, ¶25, 195 Vt. 204, 215, and allegations that "the reasons identified by the Town for its decision lacked evidentiary support or rested on inaccurate assumptions," *id.*, 2013 VT 72, ¶27, 195 Vt. 204, 216. In short, the allegations in the Amended Complaint were actually litigated in the state court litigation, and Plaintiff's constitutional concerns could have been raised in the context of those cases. Claim preclusion therefore applies.

### IV.    Conclusion

For all the reasons provided above and in the Motion to Dismiss Amended Complaint, the Town and the Municipal Defendants respectfully request this Court dismiss the Amended Complaint in its entirety as to the Town and the Municipal Defendants.

Respectfully submitted, this 1st day of October, 2021.

                CARROLL, BOE, PELL & KITE, P.C.

                BY:/s/: Kevin L. Kite_____
                      James F. Carroll, Esquire
                      Kevin L. Kite, Esquire
                      64 Court Street, Middlebury, VT  05753
                      (802) 388-6711
                      jcarroll@64court.com
                      kkite@64court.com

                      *Attorneys for Municipal Defendants*