UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DAVID P. DEMAREST,                           )
                                             )
             Plaintiff,                      )
                                             )
      v.                                     )        Case No. 2:21-cv-167
                                             )
TOWN OF UNDERHILL, et al.,                   )
                                             )
             Defendants.                     )

**OPINION AND ORDER**
(Docs. 5, 8, 51, 52)

Pro se plaintiff David P. Demarest brings this civil action against the Town of Underhill

(the "Town"), Daniel Steinbauer, Bob Stone, Peter Duval, Dick Albertini, Judy Bond, Peter

Brooks, Seth Friedman, Marcy Gibson, Barbara Greene, Carolyn Gregson, Stan Hamlet, Rick

Heh, Brad Holden, Faith Ingulsrud, Kurt Johnson, Anton Kelsey, Karen McKnight, Nancy

McRae, Michael Oman, Steve Owens, Mary Pacifici, Clifford Peterson, Patricia Sabalis, Cynthia

Seybolt, Trevor Squirrell, Rita St. Germain, Daphne Tanis, Walter "Ted" Tedford, Steve

Walkerman, Mike Weisel, Barbara Yerrick (the "Individual Defendants" and, collectively with

the Town, the "Municipal Defendants"), Front Porch Forum ("FPF"), and the Jericho Underhill

Land Trust ("JULT").  His claims stem in large part from the Town's reclassification of a portion

of Town Highway 26 ("TH 26"), which abuts his private property, to trail status.

On June 21, 2021, Plaintiff initially filed a ninety-page Complaint alleging twelve causes

of action and naming two Defendants, the Town and Town Selectboard Chair Daniel Steinbauer,

in the caption of the Complaint.  (Doc. 1.)  On July 13, the Municipal Defendants moved to

dismiss the Complaint arguing, among other things, that Plaintiff's failure to name all thirty-four

defendants in the case caption required dismissal of the Complaint and leave to file an Amended

Complaint.  (Doc. 5.)  On July 14, FPF moved to dismiss the single claim alleged against it in the

Complaint under Federal Rule of Civil Procedure 12(b)(6) arguing Plaintiff failed to state a claim

for violation of his First Amendment rights against FPF because FPF is not a governmental

entity and cannot be held liable under 42 U.S.C. § 1983.  (Doc. 8.)  On August 2, in response to

the motions to dismiss, Plaintiff filed opposition briefs as well as an Amended Complaint.  (*See*

Docs. 44–46.)

On August 20, 2021, JULT moved to dismiss the two counts alleged against it in

Plaintiff's Amended Complaint under Rule 12(b)(6) arguing Plaintiff failed to state a claim for

violation of his constitutional rights against JULT because JULT is not a governmental entity

and cannot be held liable under 42 U.S.C. § 1983.  (Doc. 51.)  Because of the length and breadth

of the ninety-six page Amended Complaint (Doc. 46), the Municipal Defendants sought and

received permission to file a forty-page motion in response to the pleading.  On August 23, they

moved to dismiss under Rule 12(b)(6) arguing Plaintiff's claims are barred by the statute of

limitations and res judicata and nonetheless fail to state a claim upon which relief can be granted.

(Doc. 52.)  Plaintiff opposes each of these motions (Docs. 55, 56) and the Municipal Defendants

and JULT each filed replies.  (Docs. 58, 59.)  FPF's motion to dismiss is also fully briefed.  (*See*

Docs. 50, 53, 57.[1])

**Factual and Procedural Background**

I.      **Plaintiff's Allegations, Claims, and Relief Sought**

Plaintiff alleges that, in violation of his constitutional rights, the Municipal Defendants

"have recently succeeded in their long-term goal of maliciously rescinding all prior implicit and

---

[1] Although the Court's Local Rules do not authorize sur-replies and Plaintiff did not seek leave of court, given his pro se status and FPF's filing of a response to the sur-reply, the Court considers the additional filings.  *See Newton v. City of New York*, 738 F. Supp. 2d 397, 417 (S.D.N.Y. 2010) ("Courts have broad discretion to consider arguments in a sur-reply.").

explicit promises made by The Town of Underhill to Plaintiff for reasonable access to and use of his domicile and over 50 acres of surrounding private property." (Doc. 46 at 2, ¶ 1.) He further alleges the Municipal Defendants have discriminated against him under color of law by censoring and misrepresenting his protected speech, intentionally retaliating against his protected speech, and obstructing his right to petition. He asserts the Municipal Defendants have violated his substantive due process rights under the First, Ninth, and Fourteenth Amendments.

Plaintiff alleges the violations of his civil rights have been exacerbated "by the special self-dealing relationship and decision-making authority the Jericho Underhill Land Trust has in the Town of Underhill's determination [of] which properties the Town [] will acquire from willing sellers and which property, such as Plaintiff's, the Town [] will take without compensation." (*Id.* at 4, ¶ 5.) Plaintiff alleges the violations of his civil rights have been exacerbated by FPF's "willingly participating in the censorship of Plaintiff's protected speech." (*Id.* ¶ 5.) Plaintiff's more specific allegations are discussed in connection with analysis of his twelve claims.

Plaintiff asserts that this Court has federal question jurisdiction over the twelve causes of action he seeks to allege under 42 U.S.C. § 1983. They are: (1) violation of his procedural due process rights under the Fourteenth Amendment against the Individual Defendants; (2) a "corresponding" Fourteenth Amendment claim against the Town asserting municipal liability; (3) violation of his substantive due process and privacy rights under the First, Ninth, and Fourteenth Amendments against the Individual Defendants[2]; (4) a "corresponding" claim under the First, Ninth, and Fourteenth Amendments against the Town asserting municipal liability;

---

[2] Plaintiff's Fourth Claim also includes an allegation relating to the Town and Defendants Steinbauer, Stone, and Duval refusing to allow three non-binding advisory articles to be included on the ballot of March 4, 2021. (Doc. 46 at 80, ¶ 257.)

(5) violation of his Fifth Amendment right concerning the taking of his property against the Individual Defendants; (6) a "corresponding" claim under the Fifth Amendment against the Town asserting municipal liability; (7) violation of his First Amendment rights against certain Individual Defendants; (8) a "corresponding" claim under the First Amendment against the Town asserting municipal liability; (9) conspiracy to violate his procedural and substantive due process rights under the Fifth, Ninth, and Fourteenth Amendments against JULT; (10) violation of his First Amendment rights against FPF; (11) violation of his First Amendment right to petition against Defendants Steinbauer, Stone, Duval, Owens, and Walkerman; (12) a "corresponding" claim under the First Amendment against the Town asserting municipal liability.  *See* Doc. 46 at 77–86, ¶¶ 246–82.

For relief, Plaintiff seeks: (1) in connection with Claims One and Two: an injunction finding a Vermont Supreme Court decision to be an unconstitutional interpretation of Vermont law (Doc. 46 at 87, ¶ A), an injunction "involving the segment of TH26/New Road/Fuller Road which remained a Class IV town highway . . . generally based upon the Vermont Superior Court decision in the prior maintenance appeal but updated to account for [] further deterioration," (*id.* ¶ B), an injunction remanding "a *new* Notice of Insufficiency appeal" to Vermont courts (*id.* at 88, ¶ C), and an injunction requiring the recusal of Town officials in the event of a conflict of interest; (2) in connection with Claims Three and Four: declaratory relief stating "all Vermont Class IV Town Highways and Town Legal Trails *shall* be maintained without bias" and that interested persons in Vermont "have a substantive right that a Taking *only occur*[] due to *Necessity*" (*id.* at 89, ¶ E); (3) in connection with Claims Five and Six: compensatory damages for the "temporary categorical taking of Plaintiff's reversionary property rights and the unmitigated damages of the taking of additional property interests and value" from the 2010 road

4

reclassification until the damages are mitigated (*id.* ¶ G), compensatory damages "for the past taking of the reasonable expectation of privacy at Plaintiff's domicile," (*id.* at 90, ¶ H) and declaratory relief "confirming the downgrade of a Town Highway to an *entirely unmaintained* Legal Trail or an *entirely unmaintained* Class IV Road constitutes a greater categorical taking than a conversion of a railroad right of way into a Legal Trail" (*id.* ¶ I), an injunction requiring the Town to reclassify the Crane Brook Trail back to Class III or Class IV Town Highway that is "*reasonably maintained*," or to "*discontinue* a portion of the unmaintained segment of Class IV road and [Crane Brook] Trail," or compensate Plaintiff for the loss of all claimed property rights (*id.* at 91, ¶ J), and punitive damages against Defendants Walkerman and Albertini equal to the amount of capital gains they each received from sale of real estate; (4) in connection with Claims Seven and Eight: compensatory and punitive damages for Defendants' retaliatory actions and censorship; (5) in connection with Claim Nine: compensatory and punitive damages against JULT for violations of Plaintiff's constitutional rights and any additional Individual Defendants liable for collusion; (6) in connection with Claim Ten: a declaration that "the nexus between Defendant Front Porch Forum and local Vermont governmental authority as 'Essential Civic Infrastructure' precludes the censorship of protected speech" (*id.* at 93, ¶ S); (7) in connection with Claims Eleven and Twelve: an injunction requiring the Town to allow "the Petition on Public Accountability *Advisory-Articles* to be properly warned and placed on the ballot to be voted upon Town Meeting Day" (*id.* at 94, ¶ T).  Plaintiff also seeks punitive damages against a number of Individual Defendants.  Against the Town and Town officials, Plaintiff seeks compensatory damages for costs incurred in past litigation and for the extreme stress, mental and emotional pain and suffering, and physical health impacts litigation with the Town caused.

II.     **Prior Litigation**

Plaintiff owns a 51.3-acre parcel of land adjacent to TH 26 that he purchased in 2002. "[P]laintiff's land is adjacent to the corridor of former TH 26 and, after the Town reclassified portions of TH 26, a segment became a legal trail. The westerly boundary of [P]laintiff's property adjoins a southerly segment of Fuller Road and the northerly segment of Crane Brook Trail. The property is not adjacent to New Road." *Demarest v. Town of Underhill*, 2021 VT 14, ¶ 22, 256 A.3d 554.

Plaintiff and the Town have an extensive history of prior litigation involving TH 26 beginning over a decade ago in 2010. As the Supreme Court of Vermont has explained:

> The Town reclassified portions of TH 26 as a legal trail in 2001 and stopped maintaining the roadway at that time. The Town initiated a new reclassification proceeding in 2010, after a suit was filed, that challenged the sufficiency of the 2001 reclassification and sought an order requiring the Town to maintain the roadway. Plaintiff was involved in that suit. The June 2010 Selectboard reclassification decision found that reclassification was for the public good and convenience and necessary for the Town's inhabitants. The Town's reclassification resulted in TH 26 being divided into three segments: (1) New Road, a class 3 town highway; (2) Fuller Road, a class 4 town highway, and (3) Crane Brook Trail, a legal trail, connecting New Road and Fuller Road.
>
> Plaintiff, and other landowners appealed the Selectboard's reclassification decision under Vermont Rule of Civil Procedure 75. The Maintenance case was put on hold pending resolution of the reclassification appeal. Ultimately, the superior court concluded that the Town's 2010 reclassification was supported by the evidence. That case was appealed, and this Court affirmed, holding that the Selectboard's decision was supported by the evidence. *See Demarest v. Town of Underhill*, 2013 VT 72, ¶¶ 26-32, 195 Vt. 204, 87 A.3d 439 (affirming Town's decision to reclassify road as a trail).
>
> When [P]laintiff initially purchased his property in 2002, the Town approved the construction of a residence on the property. The parties dispute whether access to the property was primarily by Fuller Road or New Road prior to the reclassification. After the Town reclassified a portion of TH 26 as a trail, [P]laintiff's only highway access was by Fuller Road. If [P]laintiff could use the trail to access New Road, he would have a more direct route to Underhill Center.
>
> In August 2015, [P]laintiff applied to the Town's Selectboard for highway access to a proposed new subdivision on his property. He proposed that some of the lots would have access by Fuller Road with the remaining lots to have

6

vehicular access via the [Crane Brook] trail to New Road.  The Selectboard
denied the application in May 2016.

Plaintiff filed this suit, seeking a declaration that he had a right of
vehicular access over Crane Brook Trail and appealing the denial of the permit.
The parties cross-moved for summary judgment on different grounds.  Plaintiff
moved for summary judgment on the issue of whether he had a right of access
over the trail. . . .   The Town moved for summary judgment on the ground that
[P]laintiff's claim was barred by res judicata.

*Demarest v. Town of Underhill*, 2021 VT 14, ¶¶ 2–7, 256 A.3d 554.

The Vermont Supreme Court determined that:

[T]he claim here regarding [P]laintiff's reasonable and convenient access to his
property involves the same set of facts as those relevant to the Rule 75 appeal in
that the facts are related in time, space, origin, and motivation.  Both cases
originated with the Town's act of reclassifying a portion of TH 26 as a trail.  This
action gave rise to both the appeal of the classification decision and [P]laintiff's
dispute over whether he was entitled to vehicle access across the new trail.

*Id.* ¶ 14.  The VSC further noted "[P]laintiff's motivation for challenging the reclassification

decision was the same as his motivation underlying his current request for a declaratory

judgment[:]  Plaintiff's concern has always been his access to his property via the trail."  *Id.* ¶ 15.

Accordingly, the court held Plaintiff's "declaratory-judgment claim asserting a right of access

over the trail is barred because it should have been brought in the first suit given that both claims

stemmed from the same transaction."  *Id.* ¶ 19.

Justice Robinson dissented from the "majority's conclusion that [P]laintiff forfeited his

right to advance his private claims for access over the Crane Brook Trail to subdivided lots on

his parcel by joining with neighbors in appealing the Town's decision to establish that trail in

place of the public highway that previously traversed the same corridor."  *Demarest*, 2021 VT

14, ¶ 34 (Robinson, J., dissenting).  She determined that the "two cases arise from distinct

transactions that are separate in time and character and do not constitute a convenient trial unit,

and treating them as a unit does not conform to the parties' expectations or business usage."  *Id.*

7

## Discussion

### I.      Legal Standards

#### A.      Motion to Dismiss

In adjudicating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept as true all of the allegations contained in a complaint" and decide whether the complaint states a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  All complaints, therefore, must contain "sufficient factual matter[] . . . to state a claim" for relief.  *Id.*  While the Court must draw all reasonable inferences in the non-moving party's favor, *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016), self-represented litigants nevertheless must satisfy the plausibility standard set forth in *Iqbal*.  *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80–81 (2d Cir. 2020).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Therefore, after separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the Plaintiff is entitled to relief.  *Id.* at 679.

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference," as well as "facts of which judicial notice may properly be taken."  *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014).  "[A court] may properly take judicial notice of [a] document" when the document is "publicly available and its accuracy cannot reasonably be questioned."  *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that

is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  Because Plaintiff references the prior state-court litigation between Plaintiff and the Town and the court may consider matters of public record, the Court takes judicial notice of the Vermont Supreme Court decisions which are public records.  *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("[R]elevant matters of public record" are susceptible to judicial notice."); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.  *Conn. Gen. Life Ins. Co. v. BioHealth Labs, Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) (internal quotation marks omitted).

**B.    Amended Pleading**

Plaintiff filed his Amended Complaint, together with a red-lined version as required by local rule, "as a matter of course in accordance with Federal Rules of Civil Procedure."  (Doc. 46 at 1.)  Under Rule 15, "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . , whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  Because Plaintiff timely

amended his Complaint in response to the Municipal Defendants' and FPF's motions to dismiss, the Amended Complaint is the operative pleading in this case.  *See Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) ("It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect[.]") (internal quotation marks omitted).

"[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020).  Here, because the Municipal Defendants have moved to dismiss the Amended Complaint, their original motion to dismiss the superseded Complaint (Doc. 5) is DENIED as it is moot.  FPF, however, did not move to dismiss the Amended Complaint.  Instead, in its reply in further support of its original motion, FPF requests the Court apply its arguments to the Amended Complaint.  (*See* Doc. 50 at 2.)  Plaintiff does not oppose this request.  Accordingly, the Court evaluates FPF's motion to dismiss (Doc. 8) in light of the allegations contained in Plaintiff's Amended Complaint.

### C.    42 U.S.C. § 1983

Congress enacted § 1983 to provide a statutory remedy for violations of the Constitution and federal laws.  Section 1983 does not itself create or establish a federally protected right; instead it creates a cause of action to enforce federal rights created elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988).

To allege a violation pursuant to § 1983, a plaintiff must plausibly plead "(1) actions taken under color of [state] law; (2) deprivation of a constitutional or statutory right; (3) causation; [and] (4) damages." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Because the statute requires that "the conduct at issue must have occurred 'under color of' state law . . . liability attaches only to those wrongdoers who carry a badge of authority of a State and represent it in some capacity." *Tarkanian*, 488 U.S. at 191 (internal quotation marks omitted). Accordingly, private actors are not proper § 1983 defendants when they do not act under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.").

As the Supreme Court has explained, "a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Comm. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (internal citations omitted). "In final analysis[,] the question is whether the conduct allegedly causing the deprivation of a federal right can be fairly attributable to the State." *Tarkanian*, 488 U.S. at 199 (internal quotation marks omitted).

Under § 1983, "local governments are responsible only for their *own* illegal acts[;] . . . [t]hey are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted) (municipalities can be held liable "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation"). A municipality

11

may be liable under § 1983 only "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.*  The plaintiff therefore must plead "three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

Section 1983 actions that are filed in Vermont are subject to Vermont's three-year statute of limitations for personal injury actions.  *See* 12 V.S.A. § 512(4); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but . . . the statute of limitations . . . is that which the State provides for personal-injury torts.").  The accrual date of a § 1983 cause of action, however, is a "question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388; *see also Spak v. Phillips*, 857 F.3d 458, 462–63 (2d Cir. 2017).  Under federal law, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief[.]" *Wallace*, 549 U.S. at 388 (citations and internal quotation marks omitted).

## II.      Front Porch Forum's Motion to Dismiss

In his Tenth Cause of Action, Plaintiff alleges a First Amendment violation under 42 U.S.C. § 1983 against FPF.  He alleges that FPF censored Plaintiff's speech by blocking his ability to post on its platform.  Plaintiff asserts FPF has a special relationship with local Vermont

governments including the Town.  FPF moves to dismiss this claim under Rule 12(b)(6) arguing that because it is not a state actor and did not act in concert with a state actor, it cannot be held liable under § 1983.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend I.  The Fourteenth Amendment makes the First Amendment's free speech clause applicable against the states.[3]  *See Halleck*, 139 S. Ct. at 1928.  The free speech clause "prohibits only *governmental* abridgement of speech[,] . . . [it] does not prohibit *private* abridgement of speech."  *Id.*

Plaintiff asserts that "[i]t is a First Amendment violation for a public benefit corporation to act in willing participation and support of a State-actor by engaging in unequivocal viewpoint discrimination through the policy of selectively censoring political speech."  (Doc. 53 at 1 (emphasis omitted).)  Plaintiff argues that FPF can be considered a state actor because it is providing two "essential civic infrastructure" functions which were traditionally and exclusively functions of the government.  These are "the non-censored delivery of the modern-day analogue of 'post,' which was once a function exclusive to the United States Post Office," and providing "a public forum, similar to a public square, for the purpose of public assembly and communicating thoughts of local political importance."  (Doc. 53 at 1 (emphasis omitted).)  He further argues that "at times FPF is the exclusive online source of official governmental information."  (Doc. 45 at 2.)

---

[3] The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Generally, "the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'"  *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Burton*, 365 U.S. at 722).

The Supreme Court "has stressed that 'very few' functions fall into th[e] category" of exclusive public function, giving the examples of "running elections and operating a company town." *Halleck*, 139 S. Ct. at 1929. Examples of functions that the Supreme Court has ruled do not fall into that category are operating nursing homes, providing special education, representing indigent criminal defendants, supplying electricity, and operating public access channels on a cable system. *See id.* (collecting cases).

Here, delivering information or providing a forum are not functions that have traditionally and exclusively been performed by the government. "[I]t is not at all a near-exclusive function of the state to provide the forums for public expression, politics, information, or entertainment." *Halleck v. Manhattan Comm. Access Corp.*, 882 F.3d 300, 311 (2d Cir. 2018) (Jacobs, J., dissenting). Neither does Plaintiff's allegation that the Town itself uses FPF to "post" information transform FPF into a state actor. Because "merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints," *Halleck*, 139 S. Ct. at 1930, the Court finds that Plaintiff has failed to plausibly allege that FPF is a private actor that is subject to liability under § 1983 for a First Amendment violation. Indeed, "a private entity may [] exercise editorial discretion over the speech and speakers in the forum." *Id.* Even where a government grants a monopoly to or funds or subsidizes a private entity, the private entity is not transformed into a state actor unless it is performing a traditional, exclusive public function. *See Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 314 (2d Cir. 2007) (noting "the Supreme Court has narrowed the scope of its state-action jurisprudence" so that "the Court has found on more than one occasion that an entity was not engaged in state action even though it was extensively

regulated, obtained governmental approval, received substantial governmental assistance, and performed an important societal function") (internal quotation marks omitted).

Because Plaintiff's arguments and allegations regarding FPF do not suffice for the Court to find FPF is a state actor, FPF is not subject to First Amendment constraints, and FPF's motion to dismiss (Doc. 8) is GRANTED.

## III.   JULT's Motion to Dismiss[4]

In his Ninth Cause of Action, Plaintiff alleges a conspiracy to violate his procedural and substantive due process rights under the Fifth, Ninth, and Fourteenth Amendments under § 1983 against JULT.  He alleges that a significant number of the Individual Defendants are "both JULT affiliates and Town Officials acting under color of law" and the Town and JULT "act together to preferentially purchase certain properties at a premium price from Town Officials or others . . . primarily for recreation as opposed to genuine conservation."  (Doc. 46 at 69–70, ¶¶ 221, 224 (emphasis omitted).)  JULT moves to dismiss under Rule 12(b)(6) arguing that because it is not a state actor and did not act in concert with a state actor, it cannot be held liable under § 1983.  JULT further argues Plaintiff's claim is barred by both the applicable statute of limitations and the doctrine of claim preclusion.

To state a conspiracy claim under § 1983, Plaintiff must allege sufficient facts to plausibly suggest: "'(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

---

[4] JULT states that Plaintiff's Seventh Cause of Action alleges a violation of the First Amendment by JULT.  *See* Doc. 51 at 1.  Reading Plaintiff's Amended Complaint liberally, the Court, however, does not infer that the Seventh Cause of Action includes JULT.  The Court presumes it is Plaintiff's reference that "discovery is necessary . . . to potentially substantiate addition of other parties," (Doc 46 at 13, ¶ 45) as the basis for JULT's statement but the Court will not read the claim to include JULT on such a thinly veiled reference given the length and breadth of the Amended Complaint.  Nonetheless, given the Court's analysis regarding JULT's state actor status, the Court would be constrained to dismiss a First Amendment Claim under § 1983 asserted against it.

done in furtherance of that goal causing damages.'"  *Grega v. Pettengill*, 123 F. Supp. 3d 517,

541 (D. Vt. 2015) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

"'Complaints containing only conclusory, vague, or general allegations that the defendants have

engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific

instances of misconduct." *Id.* (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325

(2d Cir. 2002)).

The Ninth Amendment provides that the "enumeration in the Constitution, of certain

rights, shall not be construed to deny or disparage others retained by the people." U.S. Const.

amend. IX.  This Amendment is "not an independent source of individual rights." *Jenkins v.

Comm'r of Internal Revenue Serv.*, 483 F.3d 90, 92 (2d Cir. 2007).  Accordingly, it cannot serve

as the basis for a § 1983 claim.

The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be deprived

of life, liberty, or property, without due process of law; nor shall private property be taken for

public use, without just compensation." U.S. Const. amend. V.  The Fifth Amendment thus

prohibits two types of takings: "takings without just compensation and takings for a private

purpose." *Rumber v. Dist. of Columbia*, 487 F.3d 941, 943 (D.C. Cir. 2007).

The Fourteenth Amendment's substantive due process clause component "provides

heightened protection against government interference with certain fundamental rights and

liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *see also supra* Part II,

note 5.  Government conduct may be actionable under § 1983 as a substantive due process

violation if it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952).

Plaintiff's plausible allegations allege at most favoritism but fail to rise to the level of inflicting an unconstitutional injury on Plaintiff himself.  Plaintiff has no enforceable rights under the Ninth Amendment.  Plaintiff does not allege that his property was taken without compensation or for a private purpose by JULT and the Town.  None of Plaintiff's plausible allegations rise to the level of shocking the conscience.  His complaints that JULT worked together with the Town to preserve land for recreation as opposed to conservation do not violate Plaintiff's constitutional rights or demonstrate damage to Plaintiff.[5]  Even assuming an agreement between defendants, without a plausible allegation of a constitutional violation and damages, Plaintiff has failed to plausibly allege a conspiracy claim under § 1983 against JULT. Accordingly, JULT's motion to dismiss (Doc. 51) is GRANTED.

## IV.   Municipal Defendants' Motion to Dismiss

The Municipal Defendants move to dismiss Plaintiff's Amended Complaint on multiple grounds, including that it fails to state a claim and is largely barred by res judicata and the statute of limitations.  (Doc. 52.)  Plaintiff opposes the motion.

### A.    Official Capacity Claims

As an initial matter, the Court must dismiss Plaintiff's claims against the Individual Defendants in their official capacities as Town officials.  "There is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief."  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action

---

[5] The VSC did not find an abuse of discretion the trial court's rejection of Plaintiff's assertion that "some elected officials had been motivated to reclassify [TH 26] in an attempt to increase personal property values."  *Demarest*, 2013 VT 72, ¶ 25 & n.5.

against the municipality itself."). Accordingly, the Court dismisses Plaintiff's claims against all Individual Defendants sued in their capacities[6] as Town of Underhill officials for failure to state a claim on which relief may be granted.

### B.    Res Judicata

Plaintiff and the Town have engaged in protracted litigation regarding the Town's reclassification and maintenance of TH 26 as well as Plaintiff's vehicular access to the Crane Brook Trail. As explained above, other than Plaintiff's initial success in challenging the 2001 reclassification of TH 26, Plaintiff has lost in each state court case following the Town's 2010 reclassification proceeding. In 2013, the VSC affirmed the Town Selectboard's decision to reclassify a portion of TH 26 as a trail. Following that decision, Plaintiff's case challenging the Town's refusal to maintain the trail as a road was dismissed as moot in the Superior Court and in 2015, the VSC affirmed upon de novo review. The VSC noted that although Petitioners, including Plaintiff "believe that a more 'convenient' route is available to them[,] the fact remains that they have not been denied access to their property; they have access to their property via a public road that is maintained by the Town." *In re Town Highway 26*, 2015 WL 2383677, at *5. In 2016, however, the VSC reversed a trial court order requiring the Town to maintain the Class 4 section of TH 26. Finally, in 2021, the VSC affirmed the dismissal of Plaintiff's action seeking a declaration that he had a right of vehicle access over the portion of TH 26 reclassified as Crane

---

[6] Because Peter Duval, Judy Bond, Peter Brooks, Seth Friedman, Barbara Greene, Carolyn Gregson, Faith Ingulsrud, Kurt Johnson, Anton Kelsey, Michael Oman, Mary Pacifici, and Barbara Yerrick were named in their official capacity only, they are DISMISSED from this action. Further, Plaintiff alleges that Stan Hamlet is deceased. Under Federal Rule of Civil Procedure 17(b), the capacity of an individual to be sued is determined by the law of the individual's domicile, which the court here assumes to be Vermont. The VSC has noted that the "capacity to sue or be sued exists only in persons in being, and not in those who are dead, . . . and so cannot be brought before the court." *Benson v. MVP Health Plan, Inc.*, 2009 VT 57, ¶ 6, 978 A.2d 33, 186 Vt. 97 (quoting *Mortimore v. Bashore*, 148 N.E. 317, 319 (1925)). Because a deceased person does not have the capacity to be sued, Defendant Hamlet is also DISMISSED.

Brook Trail and appealing the Town's denial of a permit for highway access over Crane Brook Trail to a proposed new subdivision on his property.  The VSC determined Plaintiff was barred from relitigating the issue of his right of access over Crane Brook Trail.  Regarding Plaintiff's subdivision application, the VSC explained that "[i]n sum, the request was denied because allowing vehicular access across Crane Brook Trail was in direct conflict with the Town's prior prohibition of vehicles on the trail." *Demarest*, 2021 VT 14, ¶ 30.

Res judicata limits repetitious suits and preserves judicial economy.  *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  Under the doctrine, a "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *New York v. Mtn. Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019).  In Vermont, the doctrine "will preclude a claim from being litigated [in a later litigation] 'if (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding.'"  *Steuerwald v. Cleveland*, 651 F. App'x 49, 50 (2d Cir. 2016) (quoting *Iannarone v. Limoggio*, 30 A.3d 655 (2011)).  Many of the claims against the Municipal Defendants in Plaintiff's current case meet these requirements and are therefore barred from relitigation in this case.  *See Nevada v. United States,* 463 U.S. 110, 130 (1983) (noting a final judgment on the merits "puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever"); *see also Russell v. Atkins,* 165 Vt. 176, 179, 679 A.2d 333, 335 (1996) (recognizing that "[r]es judicata is intended to protect the courts and the parties from the burden of relitigation").

Each of the VSC's prior rulings were final judgments on the merits by a court with jurisdiction over the subject matter.  The parties are fundamentally the same, as in all prior cases

Plaintiff sued the Town and, in this case, Plaintiff seeks to bring claims against the Town and individuals connected with the Town.  Therefore, any cause of action asserted, or that could have been asserted, in any of the prior cases and included in this action is barred.

### 1.    Claims One and Two

In Claims One and Two, Plaintiff alleges a violation of his procedural due process rights under the Fourteenth Amendment.  He asserts the "Defendants involved in the 2010 New Road reclassification willfully violated Plaintiff's structural and procedural due process rights to an impartial decision-making process."  (Doc. 46 at 32, ¶ 106.)  He states the stay of the initial road maintenance case allowed the Town "to craft a reclassification order to satisfy the low administrative standard of review."  *Id.* ¶ 105.  He argues procedural due process "required impartial weighing of the true necessity" of the reclassification "which has taken Plaintiff's property without compensation for recreation."  *Id.* ¶ 106.  As relief, Plaintiff seeks four injunctions: (1) finding the Vermont Supreme Court decision of *Ketchum v. Town of Dorset*, 22 A.3d 500 (Vt. 2011), to be an unconstitutional interpretation of Vermont law; (2) "involving the segment of TH26/New Road/Fuller Road which remained a Class IV town highway . . . generally based upon the Vermont Superior Court decision in the prior maintenance appeal but updated to account for [] further deterioration . .  due to Defendants' sustained refusal to conduct *any* maintenance of the segment of TH26 abutting Plaintiff's property," (Doc. 46 at 87, ¶ B); (3) remanding "a *new* Notice of Insufficiency appeal" to Vermont courts to review the maintenance of the segment of TH 26 that was reclassified as Crane Brook Trail, (*id.* at 88, ¶ C); and (4) requiring the recusal of Town officials in the event of a conflict of interest.

Plaintiff challenged the Town's reclassification of TH 26 as well as the Town's maintenance of TH 26 all the way to the VSC.  The VSC determined the evidence was sufficient

to support the Town's reclassification order.[7]  Plaintiff may not again challenge the process that

was expressly approved by the VSC.  The VSC has also determined the Town has discretion to

deny requests to regularly maintain Class 4 roadways, including the portion of TH 26 that abuts

Plaintiff's property.  The VSC explained:

> Although the Town's road policy establishes less town responsibility for
> Class 4 highway repair and maintenance than [Plaintiffs] desire, . . . it is fully
> consistent with the discretion accorded by [governing statute].  [Plaintiffs] are
> bound to respect the Town's discretion, and cannot trump the selectoard's
> decision through their own view of what the public good requires. If [Plaintiffs]
> do not agree that the Town's decision satisfies the necessity of the town, the
> public good, or the convenience of the inhabitants of the Town, the conduct of
> elected officials, detrimental to the interests of the town . . . , is subject to
> regulation at the polls.

*Demarest v. Town of Underhill*, 2016 VT 10, ¶ 16, 138 A.3d 206, 211, 201 Vt. 185, 192 (internal

quotation marks omitted).  Finally, the VSC affirmed that a town has no obligation to maintain a

legal trail.  *See In re Town Highway 26*, No. 2014-386, 2015 WL 2383677, at *4 (Vt. May 2015)

("The ultimate fact remains . . . that the disputed segment of TH 26 is a trail, and the [T]own has

no legal obligation to maintain a trail.").  Plaintiff may not again challenge the Town's

reclassification or maintenance decisions in this Court under the guise of due process.[8]  *See*

---

[7] The VSC noted that the circumstances were "unique":

> [A]s a matter of law the segment at the time of the 2010 reclassification order consisted
> of a Class 3 and Class 4 road.  But the practical reality on the ground was that it had long
> since reverted to trail-like conditions, and was perceived as a trail by townspeople as a
> result of the later-invalidated 2001 reclassification effort.  Whether the decision here was
> to 'downgrade' the legal status of the segment, or to not upgrade it, was amply
> supported by the Selectboard's findings and the evidence upon which it relied.

*Demarest*, 2013 VT 72, ¶ 33.

[8] To the extent that Plaintiff names additional Individual Defendants who were not parties to the prior
actions, who have not already been dismissed, those Individual Defendants, as current and former town
officials, are in privity with the Town with regard to these claims because Plaintiff does not allege any
acts by any individual that was "separate and apart from acts done in their supervisory authority."  *See
Cornelius v. Vermont*, No. 2020-227, 2021 WL 1853674, at *2 (Vt. May 7, 2021) (noting that "although a
public official sued in her individual capacity is generally not considered to be in privity with the
government for purposes of res judicata, that is not true . . . when a party is sued as an individual for
actions taken solely in her official role.") (internal quotation marks omitted).

*Exxon Mobil Corp. v. Healey*, No. 18-1170, --- F.4th ---, 2022 WL 774516, at *10 (Mar. 15, 2022) (explaining claims share identity when they "grow out of the same transaction . . . and seek redress for the same wrong") (cleaned up).  Plaintiff's argument that his constitutional claims were not adjudicated by the state court are unavailing because a state court is fully competent to adjudicate federal constitutional claims.  *See Haywood v. Drown*, 556 U.S. 729, 739–41 (2009) (explaining that state courts of general jurisdiction may properly hear both suits for damages under § 1983 and suits for declaratory and injunctive relief").

Additionally, to the extent Plaintiff seeks review of the VSC's ruling in *Ketchum*, this court does not sit as a court of appeals for the state courts.  *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011).  This Court also does not remand cases to the state court.  If Plaintiff desires to bring a new notice of insufficiency appeal, such a claim is properly pursued in state court.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").  Therefore, to the extent that Plaintiff is complaining of injury caused by any of the Vermont state court decisions, such as the VSC's decision applying *Ketchum*, this Court would lack subject matter jurisdiction over his claims under the *Rooker-Feldman* doctrine.  *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (explaining the *Rooker-Feldman* doctrine applies when a plaintiff: (1) loses in state court; (2) complains of injuries caused by a state-court judgment; (3) invites the federal court to review and reject that judgment; and (4) commences federal court proceedings after the state-court judgment was rendered); *see also Grundstein v. Vt. Bd. of Bar Examiners*, Case No. 5:20-cv-210, 2021 WL 2660083, at * 7 (D. Vt. May 25, 2021) (explaining that, under the *Rooker-Feldman*

doctrine, "a federal district court lacks subject matter jurisdiction over the functional equivalent of an appeal from a state court ruling").

Plaintiff's Claims One and Two must be dismissed because they are barred by res judicata.

### 2.     Claims Three and Four

In Claims Three and Four, Plaintiff alleges a violation of his substantive due process and privacy rights under the First, Ninth, and Fourteenth Amendments.  He asserts Municipal Defendants violated the Ninth and Fourteenth amendments "by engaging in a *willful* and *relentless* effort over the span of around two decades to purloin the use, value, access and personal enjoyment of Plaintiff's private property."  (Doc. 46 at 33-34, ¶ 110.)  He states a number of Individual Defendants "colluded" to violate his due process rights "by initiating the 2010 New Road Reclassification process . . . to reach a predetermined future reclassification decision in order to take Plaintiff's property without compensation."  *Id.* at 34, ¶ 111.  Plaintiff seeks declaratory relief stating "all Vermont Class IV Town Highways and Town Legal Trails *shall* be maintained without bias" and that interested persons in Vermont "have a substantive right that a Taking *only occur*[] due to *Necessity*."  (Doc. 46 at 89, ¶ E.)

As the VSC has explained, "[i]n 2001, the [Underhill] selectboard reclassified portions of TH 26 as a legal trail to be used for recreational purposes.  The Town complied with all of the statutory procedures for reclassification, except that it failed to formally record the reclassification order in the land records."  *In re Town Highway 26*, 2015 WL 2383677, at *1.  After the reclassification, the Town stopped maintaining the Crane Brook Trail segment of TH 26.  Plaintiff purchased his property in 2002.  In 2010, following Plaintiff's challenge of the 2001 reclassification order, the Town again approved the reclassification which, as discussed

23

above, was affirmed by the VSC.  Plaintiff's challenges with regard to maintenance of both the

Crane Brook Trail and of the remaining Class 4 portion of TH 26 have failed.  The VSC has

explained the Town has discretion to deny requests to regularly maintain Class 4 roadways and

has no legal obligation to maintain a trail.  As with Claims One and Two, Plaintiff may not again

challenge the Town's reclassification or maintenance decisions in this Court under the guise of

due process.  *See Faulkner v. Caledonia Cnty. Fair Ass'n*, 869 A.2d 103, 108 (Vt. 2004)

(explaining a plaintiff is required "to address in one lawsuit all injuries emanating from all or any

part of the transaction, or series of connected transactions, out of which the action arose").

    Plaintiffs' Claims Three and Four must be dismissed because they are barred by res

judicata.

### 3.    Claims Five and Six

    In Claims Five and Six, Plaintiff alleges a violation of his Fifth Amendment right

concerning the taking of his property.  He asserts the 2010 reclassification "functionally

condemned a 49.5' wide swath of private property to simultaneously deny landowners

reversionary property rights and rescind past, present, and prospective future accessibility to

private property."  (Doc. 46 at 38, ¶ 123.)  He alleges Defendants have taken the "reasonable

access to his domicile and the reasonable expectation of privacy in and around one's home."  (*Id.*

¶ 124.)  As relief, Plaintiff seeks compensatory damages for the "temporary categorical taking of

Plaintiff's reversionary property rights and the unmitigated damages of the taking of additional

property interests and value" from the 2010 road reclassification until the damages are mitigated

(*id.* at 89, ¶ G), compensatory damages "for the past taking of the reasonable expectation of

privacy at Plaintiff's domicile," (*id.* at 90, ¶ H) and declaratory relief "confirming the downgrade

of a Town Highway to an *entirely unmaintained* Legal Trail or an *entirely unmaintained* Class

24

IV Road constitutes a greater categorical taking than a conversion of a railroad right of way into a Legal Trail" (*id.* ¶ I), an injunction requiring the Town to reclassify the Crane Brook Trail back to Class III or Class IV Town Highway that is "*reasonably maintained*," or to "*discontinue* a portion of the unmaintained segment of Class IV road and [Crane Brook] Trail," or compensate Plaintiff for the loss of all claimed property rights (*id.* at 91, ¶ J), and punitive damages against Defendants Walkerman and Albertini equal to the amount of capital gains they each received from sale of real estate.

While the Court is not insensitive to Plaintiff's frustration regarding access to his home, the VSC has determined that access to Plaintiff's home remains via the northern Class 4 section of TH 26 and has affirmed the reclassification of the former Town Highway to a legal trail. With regard to the maintenance, or lack thereof, of the Class 4 portion of TH 26, the Court is left to restate the VSC's 2016 conclusion: "If [Plaintiff] do[es] not agree that the Town's decision satisfies the necessity of the town, the public good, or the convenience of the inhabitants of the Town, the conduct of elected officials, detrimental to the interests of the town . . . , is subject to regulation at the polls." *Demarest*, 2016 VT 10, ¶ 16. Res judicata prevents this Court from considering a claim challenging the Town's VSC-affirmed reclassification of TH 26, creation of Crane Brook Trail, and maintenance of Class 4 TH 26 roadway. *See Faulkner*, 869 A.2d at 108. Plaintiff's Claims Five and Six must be dismissed.

This Court has acknowledged that "applying res judicata, especially in a pro se case, can render harsh results." *Steuerwald*, No. 1:14-cv-88, 2015 WL 1481564, at *6 (D. Vt. Mar. 31, 2015). However, the doctrine is equally applicable to pro se plaintiffs.[9] *See Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002) (affirming dismissal of pro se plaintiff's

_____

[9] The Court notes that Plaintiff was represented by counsel in state court.

complaint on res judicata grounds where plaintiff raised new legal theory involving the same events as those alleged in the first complaint).  As the Supreme Court has explained, "Section 1983[] does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims."  *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81 (1984).  Issues arising out of the same set of operative facts cannot be relitigated in federal court simply because Plaintiff has decided to cast them in a slightly different mold.  Res judicata prevents such a result.

### C.      Statute of Limitations

Plaintiff commenced his action in this Court on June 21, 2021.  In Claims One through Six, as discussed above, Plaintiff primarily challenges the 2010 reclassification of TH 26 and the effects of that decision on his vehicular access to his property.  The statute of limitations for a § 1983 claim brought in federal court in Vermont is three years.  Even if these claims are construed as takings claims, which enjoy a longer six-year statute of limitations under 12 V.S.A. § 511, all claims based on conduct occurring prior to June 21, 2015, would be barred.

All of Plaintiff's relevant factual allegations regarding Claims One through Six predate 2015.  *See generally* Doc. 46.  Plaintiff argues that his claims are not barred because the VSC's decision in his action seeking a declaration that he had a right of vehicle access over Crane Brook Trail and appealing the denial of a permit for highway access over Crane Brook Trail for his proposed subdivision was issued February 26, 2021.  He asserts that, in that decision, the VSC "granted the Town of Underhill discretion to rescind Plaintiff's self-executing and exercised prior right of access over the 'Crane Brook Trail.'"  (Doc. 55 at 20 (emphasis omitted).)  The VSC's holding, however, was that Plaintiff's claims were barred by claim preclusion because they involved the same set of facts as his earlier litigation, specifically "the

Town's act of reclassifying a portion of TH 26 as a trail." *Demarest*, 2021 VT 14, ¶ 14.  The

VSC highlighted that "Plaintiff's concern has always been his access to his property via the

trail." *Id.* ¶ 15.

Plaintiff also argues that the Supreme Court's decision in *Knick v. Township of Scott*,

139 S. Ct. 2162 (2019), saves his claims from the statute of limitations bar.  Plaintiff is correct

that the Supreme Court overturned prior precedent that required exhaustion of remedies in state

court.  *See Knick*, 139 S. Ct. at 2177 (holding a plaintiff asserting a Takings Clause claim need

not seek relief in state courts before bringing a claim in federal court).  The fact remains that

Plaintiff brought his claims stemming from the Town's handling of TH 26 in state court and lost.

As determined above, the Court is required by federal law to apply res judicata to Plaintiff's

claims raised here.  *See Morabito v. New York*, 803 F. App'x 463, 468 (2d Cir. 2020) (rejecting

argument that, in the wake of *Knick*, the federal district court should not apply collateral estoppel

to state court rulings).  Plaintiff fails to cite support for the proposition that *Knick* somehow

resurrects claims barred by res judicata.  *Compare Stensrud v. Rochester Genesee Reg'l Transp.

Auth.*, 507 F. Supp. 3d 444, 455 (W.D.N.Y. 2020) (allowing a takings claim to proceed in federal

court where "when *Knick* was issued, [the] plaintiff was actively litigating a takings claim

through state court procedures but had not yet filed a §1983 claim in federal court").

Plaintiff's allegations in support of Claims One through Six demonstrate that Plaintiff had

a complete cause of action before the middle of 2015 as his constitutional claims arise from

decisions the Town made with regard to reclassifying and then maintaining, or failing to

maintain, TH 26 which occurred prior to 2015.  Accordingly, even if Plaintiff's Claims One

through Six were not barred by the doctrine of res judicata, the Court would find that they are

barred by the statute of limitations governing § 1983 actions.

### D.       Failure to State a Claim

#### 1.       Claims Seven and Eight

In Claims Seven and Eight, Plaintiff alleges a violation of his First Amendment rights against certain Individual Defendants and the Town.  Plaintiff alleges a longstanding pattern and practice of the Town willfully misrepresenting, editing, deleting, and suppressing speech from public meetings and other records, including deleting significant portions of Trails Committee Meeting Minutes in which Plaintiff participated.  He states the Town removed public records from the Town website "to manipulate the public record [and] interfere with Plaintiff's . . . reasonable access to public records which were previously readily available on the Town's website."  (Doc. 46 at 30, ¶ 99.)  He asserts Defendants refused to honor a petition submitted in 2002 requesting the Town reconsider its efforts to prohibit vehicular traffic of TH 26.  He alleges October 24, 2013 Town Selectboard minutes defame his character by describing him and former co-litigants as "litigious" but "ignoring the factual history of Plaintiff's involvement in the Trails Committee."  (*Id.* ¶ 200.)  Plaintiff asserts the September 14, 2020 Town Selectboard meeting minutes were censored and the revised minutes continued to contain inaccuracies.  He further alleges the Municipal Defendants "have a pattern and practice of actively thwarting the individual rights to have a say in local government."  (*Id.* at 63-64, ¶ 206.)  "Plaintiff asserts Town officials have violated [his] First [A]mendment right by preventing him . . . from speaking at least once about a topic being discussed or debated or taken other official actions to entirely censor Plaintiff or the accurate content of Plaintiff's protected speech in public meeting."  (*Id.* at 64, ¶ 207 (emphasis omitted).)  As relief, he seeks compensatory and punitive damages for Defendants' retaliatory actions and censorship.

28

To state a plausible claim of a violation of the right to free speech, a plaintiff must allege "that official conduct actually deprived them of that right." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008). To prove this deprivation, a plaintiff must allege facts "showing either that (1) defendants silenced him or (2) defendants' actions had some actual, non-speculative chilling effect on his speech." *Id.* (cleaned up); *see also Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (requiring plaintiff to show that defendants "inhibited him in the exercise of his First Amendment freedoms"). Without more, the single allegation[10] that Municipal Defendants violated Plaintiff's constitutional right by preventing him from speaking "at least once" is a legal conclusion that the Court need not accept as true.

Plaintiff's remaining allegations pertain to the Town's handling of its public records. His allegations of misrepresenting, editing, deleting, and suppressing speech from meeting minutes, as well as his allegation of removal of records from the Town website, do not support a finding that Municipal Defendants actually silenced him or that these actions, ostensibly taken after Plaintiff's speech, had any effect on his speech. This Court has noted that the "inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury." *Steuerwald*, 2015 WL 1481564, at *7.

Because Plaintiff's allegations fail to support a claim of a denial of his constitutional right, they also cannot support a claim of municipal liability. Plaintiff has failed to allege specific facts indicating that Municipal Defendants actually deprived Plaintiff of his right to speak freely. His allegation that Town officials prevented him from speaking "at least once" about "a topic" is conclusory. *See Twombly*, 550 U.S. at 561–63 (observing that "a wholly

---

[10]  Plaintiff also asserts Individual Defendants Hamlet, Steinbauer, Stone, Peterson, McKnight and McRae committed "brazen" violations of his First Amendment rights but without stating any particular details of these alleged violations. (Doc. 46 at 64, ¶ 207.) As a result, the Court cannot determine whether these Individual Defendants' actions actually deprived him of his right to free speech.

conclusory statement of claim" warrants dismissal).  In the absence of specific factual allegations that Municipal Defendants inhibited his exercise of his First Amendment freedoms, Plaintiff has failed to state a claim.  Counts Seven and Eight must be dismissed.

### 2.    Claims Eleven and Twelve

In Claims Eleven and Twelve, Plaintiff alleges a violation of his First Amendment right to petition against Defendants Steinbauer, Stone, Duval, Owens, and Walkerman as well as the Town.  He alleges that these defendants "refused to abide by the demands" of the 2010 Petition on Fairness in Road Maintenance of Public and Private Roads or of the 2020 Petition on Public Accountability.  (Doc. 46 at 75, ¶¶ 240–41.)  He asserts the 2010 Petition "could have prevented over a decade of state litigation and many of the present causes of action."  (*Id.* at 74–75, ¶ 239.) He states the 2020 Petition sought "to have three non-binding articles properly warned and subsequently placed on the 2021 Town Meeting Day ballot."  (*Id.* at 74, ¶ 238.)

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend I.  However, "[n]othing in the First Amendment or in th[e] [Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."  *Minn. State Bd. v. Knight*, 465 U.S. 271, 285 (1984). Notably, Plaintiff does not allege that he was prevented from presenting his petitions containing his grievances to the Town.  Because Plaintiff alleges only that Town Officials refused to abide by the demands he presented in the two petitions, conduct which does not offend the Constitution, he fails to state a claim under the First Amendment right to petition on which relief can be granted.[11]  *See Ridgeview Partners, LLC v. Entwhistle*, 227 F. App's 80, 82 (2d Cir. 2007)

---

[11] Even if Plaintiff had stated a cognizable § 1983 claim based on the Town's handling of the 2010 Petition, it would be barred by the statute of limitation.  *See Ellul v. Congregation of Christian Bros.*,

(affirming dismissal of First Amendment claim "alleging that appellees 'refuse[d] to consider or act upon grievances' [because such] conduct does not violate the First Amendment"); *see also Futia v. Westchester Cnty. Bd. of Legislators*, 852 F. App'x 30, 32 (2d Cir. 2021) (affirming dismissal of First Amendment right to petition claim for failure to state a claim "because the right to petition the state does not mean there is a right to a response").  In the absence of a plausible constitutional violation of his First Amendment right to petition the government, Plaintiff's municipal liability claim also fails.

Even if Plaintiff could establish an Individual Defendant or the Town itself unlawfully deprived him of the right to have his petitions presented to voters at Town meeting, "a public official's failure to follow state law . . . is not equivalent to a federal constitutional injury." *Tallman v. City of Chautauqua*, 335 F. App'x 92, 94 (2d Cir. 2009).  Such a claim is "properly pursued in state court."  *Id.* at 94; *see also Pennhurst*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Plaintiff's Counts Eleven and Twelve are DISMISSED.

## V.  Leave to Amend

The Second Circuit has cautioned that a court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile."  *Garcia v. Super. of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (internal quotation marks omitted).  "Amendment is futile where the problems with the complaint's claims are substantive and not the result of inartful pleading." *Biswas v. Rouen*, 808 F. App'x 53, 53 (2d Cir. 2020) (internal quotation marks and alterations omitted).  As Plaintiff acknowledges, he

---

774 F.3d 791, 798 n.12 (2d Cir. 2014) (explaining the issue of the statute of limitations may be decided at the motion to dismiss stage if it appears on the face of the complaint).

has been engaged in litigation with the Town challenging the reclassification, maintenance and use of TH 26 for over a decade.  Consequently, several of his claims are barred by res judicata, statutes of limitations, or both.  Certain claims are also barred by the lack of state action and a plain failure to state plausible constitutional harm.  Better pleading will not cure those deficiencies.  The motions to dismiss brought by FPF and JULT, as well as the municipal defendants' motion to dismiss Counts 1-6 and 11-12, are dismissed with prejudice and without leave to amend.

The Court is dismissing Counts 7 and 8 against the municipal defendants for failure to state a plausible factual claim.  Although it is not clear that better pleading could cure the deficiencies in those claims, Plaintiff may petition the court for leave to amend.  In doing so, Plaintiff must explain why further amendment of each claim he seeks to assert would not be futile.  Additionally, he must include his proposed Second Amended Complaint.

A proposed Second Amended Complaint must include all of Plaintiff's factual allegations in their entirety and must set forth all plausible claims he has against all defendants and all the relief he seeks.  *See* Fed. R. Civ. P. 8(a).  A Second Amended Complaint, if filed, will supersede and completely replace the Amended Complaint.  *See Hancock*, 882 F.3d at 63 (noting "it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (cleaned up).  Accordingly, reference back to either the original Complaint or Amended Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont.  *See* D. Vt.  L.R. 15(b).  Equally important, a Second Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in consecutively numbered paragraphs as required by Rule 10.  Plaintiff is advised against unnecessary prolixity as it "places

32

an unjustified burden on the court and the part[ies] who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42–43 (2d Cir. 1988) (cleaned up) (affirming dismissal of a fifteen-page single-spaced complaint containing a "surfeit of detail").

### CONCLUSION

For the reasons discussed above, Municipal Defendants' original motion to dismiss the superseded Complaint (Doc. 5) is DENIED AS MOOT; Defendant Front Porch Forum's motion to dismiss (Doc. 8) is GRANTED; Defendant Jericho Underhill Land Trust's motion to dismiss (Doc. 51) is GRANTED; and Municipal Defendants' motion to dismiss (Doc. 52) is GRANTED. Plaintiff's Amended Complaint (Doc. 46) is DISMISSED. Plaintiff may move for leave to amend as set forth above. Failure to file a motion for leave to amend, together with a proposed Second Amended Complaint, on or before April 29, 2022, shall result in closure of the case.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 29th day of March 2022.


<u>/s/William K. Sessions III</u>
William K. Sessions III
District Court Judge